Clover Bar, Inc. Liquor License Case.

Argued September 12, 1963.    Before RHODES, P. J.,
ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and
FLOOD, JJ.

*Kenneth Syken*, with him *B. Nathaniel Richter*, and
*Richter, Lord, Toll & Cavanaugh*, for appellant.

*James Iannucci*, Special Assistant Attorney Gener-
al, with him *Thomas J. Shannon*, Chief Counsel for
Pennsylvania Liquor Control Board, and *Walter E.
Alessandroni*, Attorney General, for Commonwealth,
appellee.

OPINION BY WATKINS, J., March 17, 1964:

This appeal is from the order of the Court of Quarter Sessions of Philadelphia County which sustained an order of the Liquor Control Board suspending appellant's liquor license for twenty days. This matter was submitted to the court below on the record established at several hearings before an examiner of the Board. The facts appear to be as follows:

On July 5, 1960, a United States Treasury agent conducted an inspection of the licensee's establishment at 1752 North 20th Street in Philadelphia, and made a William's Reagent Test on several of the opened bottles of whiskey. This test indicated something amiss with the contents of the bottles. Twelve open bottles of whiskey were seized and turned over to a chemist for the Treasury Department for analysis.

On September 22, 1960, two examiners of the liquor control board, after checking the record of purchases by the licensee at the state liquor store, went to the licensed premises and removed nine additional bottles of whiskey which they turned over to the chief chemist for the Board for analysis.

The contents of fifteen of the seized bottles were analyzed by the chemists for the treasury department and for the liquor control board. They then analyzed so-called authentic samples of the various named brands which were from unopened bottles secured either from a state store or direct from the distillery. They found that the seized samples held a far greater percentage of solids than did the authentic samples and testified that in their opinion the seized bottles had been refilled or adulterated and did not conform to the contents set forth on the labels attached to the bottles.

The court below after constructing a chart to indicate the results of the analyses of the various brands noted the similarity of the results of the analyses of the seized samples and properly concluded that these samples all came from the same source.

The appellant contends that the results of the tests made by the chemists should not be admitted because it was not shown that all the experiments were made under the exact same conditions; that analysis of authentic samples were made many months prior to that of the seized samples; and that it was not shown when the seized or authentic samples were purchased or distilled by the maker.

Experiments for use in a trial to be admissible are normally held to a very strict standard and must be thoroughly authenticated before being admitted and this for the very good reason that normally the possibility exists of great divergence of conditions and the existence of a great many variables which could affect any given result.

In this case we are dealing with one type of liquid (whiskey) which is prepared under very closely regulated conditions and of the same formula year after year. The chemists who made the analyses are those charged by the United States Treasury Department and the State Liquor Control Board with the specific task of testing whiskey sold in this Commonwealth as much to check the distiller as to check retail dispensers, such as the licensee in question. They have analyzed the various brands of whiskey over a period of many years and keep ledgers of the result of each test and are familiar with the variations within each brand. The method of testing the whiskey used by both agencies, i.e., the quantitative and qualitative analyses of a liquid, is a very old and well recognized and accepted scientific experiment when performed by a chemist of established ability as was done in this case. The result of such an experiment and the resultant opinion were accepted by our Supreme Court in *Caskie v. Coca-Cola Bottling Company, Inc.*, 373 Pa. 614, 96 A. 2d 901 (1953). And the court below points out that: "By placing the results in tabular form, our inspection of

the analyses-results alone indicates that the liquor in the bottles seized by the federal agents is remarkably similar in composition regardless of brand (Table II). This is also true of the analyses of the samples seized by the state agents. If bottles are supposed to contain brands A, B, and C, but analysis shows they all contain brand D, then it is evident that the bottles have been refilled or adulterated inasmuch as the contents do not conform to the label information. It is on this basis as well as the statements of the owner and the federal agents that we sustained the decision of the Liquor Control Board."

The court below was disturbed by the manner in which the case was presented. Both the licensee and the Board proceeded on the record made before the examiners. What Judge SLOANE said has great merit: "If evidence of chemical comparison is to be competent evidence there should be a foundation showing uniformity in methodology and quality of equipment, particularly the calibration of instruments employed.[4]

"[Note] 4. In this case there was no such foundation. Nevertheless we accept the analysis results of the seized samples, but solely for the limited purpose of relative characteristics. We express no opinion as to the absolute validity of the figures given, but think it reasonable to assume that as to one another the analysis of the various brands is relatively accurate inasmuch as these analyses were performed within a short time, and it seems reasonable to assume that the equipment and other conditions were substantially the same.

"There are published standards for the analysis of alcoholic beverages, setting forth with particularity procedures to be followed and equipment to be used. See Methods of Analysis of the Association of Official Agricultural Chemists and the Journal of that association. Conformity to standardized procedures is the touchstone of competency of scientific experiment both in and out of court."

The admission of evidence is largely within the discretion of the trial court and we find no abuse of this discretion and we find sufficient credible evidence upon which the order of the Board and that of the court below could well be founded.

Order affirmed.