627 A.2d 750

**Angelo and Jessie PASCALE, Appellants,**

**v.**

**HECHINGER COMPANY OF PA., Taylor Ramsey Corp., and Angelo Pascale.**

Superior Court of Pennsylvania.

Argued Feb. 11, 1993.

Filed June 28, 1993.

428

Barry W. Krengel, Philadelphia, for appellants.

Benjamin E. Zuckerman, West Conshohocken, for Hechinger, appellee.

Paul J. Toolan, Philadelphia, for Taylor Ramsey, appellee.

Albert P. Massey, Frazer, for Pascale, appellee.

Before CAVANAUGH, WIEAND and CIRILLO, JJ.

CAVANAUGH, Judge:

This appeal is from a judgment for appellees-defendants entered after a jury found in their favor. Appellant–Jessie Pascale fell from a set of stairs purchased from appellee-Hechinger Company of Pennsylvania (Hechinger). The Pascales sued Hechinger on breach of warranty, strict liability and negligence grounds alleging that the component parts of the stairs were in a defective condition when the Pascales purchased them from Hechinger. Hechinger joined the manufacturer of the wood, Taylor Ramsey Corporation, as an additional defendant. Hechinger also filed a cross-claim against Angelo Pascale alleging that he installed the stairs in a

negligent manner. After a three-day trial, the jury found that the wood was not defective and that Angelo Pascale was negligent and that his negligence was a substantial factor in causing the harm suffered by Mrs. Pascale.

The lower court's opinion concisely described the circumstances surrounding Mrs. Pascale's injury, as developed by the evidence presented:

On January 27, 1987 plaintiffs' Jessie Pascale and her husband Angelo went to defendant Hechinger's to purchase wood for the construction of a staircase. Mrs. Pascale was the chairperson of the Girl Scout cookie sale. The stairs would be used to gain access to a trailer which contained boxes of Girl Scout cookies. The trailer was parked in the driveway of the Pascales' residence.

When Mr. Pascale arrived at Hechinger's, he was directed to an area covered by a roof and enclosed by a fence. Mr. Pascale proceeded to examine the wood he would use in the construction of the steps. After checking for warps and defects, he purchased two pre-cut side sections and five treadboards. He constructed the steps and positioned the top step level with the trailer. The steps were not fixed to the trailer nor to the driveway, but just propped against the rear of the trailer.

Mrs. Pascale used the steps to enter the trailer for approximately two and one-half weeks without mishap. But on February 16, 1987 as she exited the trailer and placed her right foot on the center of the first step, she felt the stairs give way. Her body landed on the third step, splitting it upon impact. As a result of the fall, she sustained a back injury for which she underwent surgery.

Lower Court Opinion, September 10, 1992 at 1–2.

The following five questions are presented for our review:

1. Whether the Court erred in failing to charge the jury that a manufacturer or supplier of products is the guarantor of its safety.

2. Whether the Court erred in admitting into evidence the experiment conducted by defendant's expert witness which was performed on the eve of his testimony.

3. Whether the Court erred in bifurcating plaintiffs' counsel's closing argument after conducting the entire trial without bifurcating any issues.

4. Whether the Court erred in failing to conduct an assessment of damages hearing against additional defendant Angelo Pascale because additional defendant Angelo Pascale failed to plead or raise the statute of limitations defense in his pleadings.

5. Whether the Court erred in prohibiting plaintiffs from introducing testimony concerning the defendants' failure to warn and provide assembly instructions of the steps.

The first issue relates to the charge to the jury on strict liability. The Pascales argue that the lower court erred when it refused to charge pursuant to the Suggested Standard Jury Instructions [1] that a manufacturer or supplier is a guarantor of a product's safety. Relying upon the favorable citation to this instruction by the supreme court in *Azzarello v. Black Brothers Company, Inc.*, 480 Pa. 547, 559–560 n. 12, 391 A.2d 1020, 1027 n. 12 (1978), appellants contend that the omission of the portion of the suggested instruction that the supplier of a product is the guarantor of its safety requires a finding that the charge failed to accurately portray the law.

■ As a general rule, refusal to give a requested instruction containing a correct statement of the law is grounds for a new trial unless the substance of it has been covered in the court's charge. *Ottavio v. Fireboard Corporation*, 421 Pa.Super. 284, 285, 617 A.2d 1296, 1302 (1992) (en banc). Therefore, a jury charge must be examined in its entirety to determine if there was prejudicial error. *Harkins v. Calumet Realty Company*, 418 Pa.Super. 405, 416, 614 A.2d 699, 705 (1992).

■ The portion of the court's charge dealing with strict liability is as follows:

1. 8.02 (Civil).

Now, I'm going to instruct you concerning what we call strict liability and negligence. Let me take the strict liability issue first. That has to do with the defect claim here.

The sellers and manufacturers of a product are liable for the injuries caused to a plaintiff by a defect in the article which existed when the product left the possession of the seller. Such liability is imposed even if the seller has exercised all possible care in the preparation and sale of the product. The product, therefore, must be provided with every element necessary to make it safe for use and without any condition that makes it unsafe for use.

If you find that the product at the time it left defendants' control lacked any element necessary to make it safe for use or contained any condition that made it unsafe for use, then the product was defective and the defendant is liable for all harm caused by that defect.

I have some points for charge. I am going to read eighteen and nineteen. A product is not in a defective condition when it is safe for normal use and handling. The manufacturer of a product is not liable for all injuries, only those caused by a product which is unsafe. An unsafe product is one which left the manufacturer's control, lacking any element necessary to make it safe for its intended use.

Liability is not imposed on a manufacturer or a seller for failing to make an already safe product somewhat safer. Or for failing to utilize the safest of all possible designs. In other words, if the plaintiff was using the product in a way not intended by the manufacturer or the seller, you may consider this fact when determining whether the defendant; that is, the manufacturer and the seller are responsible for the plaintiff's injuries. It is important to bear in mind that the law does not require the manufacturer or the seller to make and sell a product which is incapable of causing harm.

A seller is responsible only for such defects as exist at the time the product leaves his control. The seller is not liable

for defective conditions created by substantial changes in the product occurring after the product has been sold. Notes of Testimony, October 25, 1991 at 276–278.

We find that the charge adequately expresses the law regarding supplier's liability for defects. The one portion of the suggested instruction regarding the supplier's status as a guarantor was properly omitted by the lower court since use of the term "guarantor" could cause confusion. The explanation of the law was complete and left no gaps simply because the word "guarantor" was not used.

The lower court properly relied upon *Butler v. Kiwi, S.A.*, 412 Pa.Super. 591, 604 A.2d 270 (1992) for the proposition that it need not follow the standard jury instruction when the charge accurately and fairly apprises the jury of the relevant law. A new trial is not required on the basis of the jury charge.

The second issue is whether evidence of an experiment performed by a defense expert witness was properly admitted. Appellants posit two reasons for exclusion of the portion of Craig D. Clauser's testimony relating to his conducting an experiment with pieces of wood on the night before he appeared in court. First, it is contended that the testimony exceeded the scope of the expert's report; second, that Hechinger failed to properly authenticate the experiment.

Craig D. Clauser was presented as a defense expert witness by Hechinger. He had submitted a pre-trial report in which he took issue with the conclusion of plaintiffs' expert that a defect in the stair side rail caused Mrs. Pascale's fall. Mr. Clauser's report concluded that a crack in the side rail was not the cause of the collapse of the stairs, but rather was a result of the collapse. Mr. Clauser's report attributed the collapse to the stairs moving away from the trailer against which they were propped. Since the stairs were not secured at either the top or the bottom, they came away from the trailer and collapsed while Mrs. Pascale was on the top step.

At trial, Mr. Clauser testified consistent with his report. He went on to testify that if the accident had been caused by a

crack in the side rail, the steps would not have been in the condition they were. Specifically, he pointed to the angle of a nail in the damaged step that would not occur if stress from a cracked side rail had caused the step to break. In an effort to demonstrate this disproof of the theory of plaintiffs' expert, Mr. Clauser referred to a test on other wood he had performed the night before he testified in court. The following exchange then occurred:

[Mr. Clauser:] As part of my investigation here, I had gotten some wood identical—as close to—the same kind of side rails from Hechinger's. I had them back at the lab. Last night, I took a piece—

MR. KRENGEL: Objection. That was not part of the report. This experiment was obviously just done last night.

MR. MAYERS: Your Honor, I believe Mr. Clauser is only using this piece of wood to demonstrate the nail hole which is part of his report and he's basing it in part on Dr. Medoff's testimony yesterday. It was only being used for illustrative purposes. It certainly was covered in the report concerning the straightness of the nail hole.

MR. KRENGEL: It's being used as a test to supplement the report at the last minute, which I cannot cross-examine or be prepared for. There was no test in that report, just observations and comments.

THE WITNESS: I can describe it, Your Honor.

THE COURT: What did you say?

THE WITNESS: I can describe what happens without this.

THE COURT: He seems not to need it. What's your position? Do you want to pursue it or not?

MR. MAYERS: I would like to pursue it, Your Honor, if it's going to be illustrated to the jury.

THE COURT: Then the motion is denied. The objection is overruled. Go ahead.

THE WITNESS: What I said was that if this piece is forced downward and slides across here, that nail has to bend. All I was trying to say what I did this. I broke a

piece off of the side rail I have in the lab, then put them beck together as they were in that hypothetical description of how it actually failed, and put the nail down through this surface into this surface, and then drove this piece downward so it slid across here. And what happens is the nail clearly bends quite a bit.

This is the portion of the nail that was down into the side rail. And it rips the nail hole almost a half an inch long rip here underneath. If you go and look at the underside of the nail hole on the similar piece on the incident steps, that hole is perfectly tight. It's a round little hole. There's only just a nail coming out of it and there's no deformation to it (indicating).

So I guess I'm making a short story pretty long. It's not possible that this fracture occurred while she was standing on the step. The fracture occurred when the steps fell down and the impact broke it. I'm sorry to be so long winded.

Notes of Testimony, October 25, 1991 at 194–196.

 The admission of testimony is a matter entrusted to the sound discretion of the trial court. *Dolan v. Carrier Corporation,* 424 Pa.Super. 615, 623 A.2d 850 (1993). Absent an abuse of discretion or an error of law, allowance of a defense expert's testimony to refute that offered by an expert for plaintiff will be upheld on appeal. *Id.* Experts may testify at trial about matters which are within the fair scope of a pretrial report. *Dible v. Vagley,* 417 Pa.Super. 302, 612 A.2d 493 (1992); *Wilkes–Barre Iron & Wire Works, Inc. v. Pargas of Wilkes–Barre, Inc.,* 348 Pa.Super. 285, 502 A.2d 210 (1985). The avoidance of unfair surprise to an adversary concerning the facts and substance of an expert's proposed testimony is the primary purpose of the rule requiring that testimony be within the fair scope of the pretrial report. *Id.; Clemons v. Tranovich,* 403 Pa.Super. 427, 589 A.2d 260 (1991).

 The report submitted on Clauser's behalf contained the following description of the physical evidence and critique of the report of plaintiff's expert, Howard P. Medoff:

I believe Mr. Medoff's opinion in this matter is incorrect and is not supported by the facts in evidence. Mrs. Pascale's fall could not be a result of failure of the side rail, since that failure could not cause collapse of the stair set. The top step is constrained from moving in a downward direction, even with the weight of a person standing upon it, by the nail spanning the fracture. That conclusion is supported by the observations that neither the protruding nail on the right side nor the two nails on the left side of the top step were bent or showed any evidence of twisting. Furthermore, the lower fracture surface of the right side rail exhibited no damage to the nail hole or fracture surface itself which would be evidence of downward movement of the step.

This portion of the pre-trial report discusses the location of the nails supporting the top step and their condition subsequent to the collapse of the steps. The demonstration, i.e., display of a piece of wood with nails in it, at trial is within the fair scope of the pre-trial report. Appellees were aware of the opinion held by Mr. Clauser concerning the condition of the top step and the effect breaking in a downward direction would have upon the supporting nails. There was no surprise contained in Mr. Clauser's trial testimony regarding his rejection of Mr. Medoff's theory of causation and his reasons for doing so.

The use of the piece of wood at trial was permissible as an illustrative tool to demonstrate the basis for Mr. Clauser's opinion. It was within the fair scope of the pre-trial report and did not prejudice the appellant's counsel in the cross-examination of Mr. Clauser.

The second basis propounded for the exclusion of Mr. Clauser's testimony concerning the piece of wood is that the wood and nails were the subject of an experiment the night before presentation of Mr. Clauser's testimony and the results were not authenticated. Appellants argue that the record does not establish that conditions under which Mr. Clauser tested the wood and nails were substantially similar to the staircase involved in the accident.

■ Generally, demonstrative evidence is admissible if its probative value outweighs the likelihood of improperly influencing the jury. *Leonard by Meyers v. Nichols Homeshield, Inc.,* 384 Pa.Super. 1, 557 A.2d 743 (1989); *Jackson v. Spagnola,* 349 Pa.Super. 471, 503 A.2d 944 (1986). Conditions must be sufficiently close to those involved in the accident to make the probative value of the demonstration outweigh its prejudicial effect. *Leonard, supra.*

■ In support of their position, appellants cite *inter alia,* cases involving chemical and electronic laboratory procedures. *In re: Clover Bar, Inc.,* 203 Pa.Super. 11, 198 A.2d 366 (1964) involved the chemical analysis of whiskey. *Commonwealth v. Henry,* 524 Pa. 135, 569 A.2d 929 (1990) excluded a videotape of an EEG obtained through laboratory-induced intoxication. These instances are not comparable to an expert's demonstration at trial using a piece of wood and nails. Although a jury may not be familiar with the precise engineering concepts involved in analysis of stress on steps caused by weakness in the component wooden parts, the physical properties of a set of wooden steps are more likely to be a matter within their knowledge than the chemical composition of whiskeys and interpretation of an EEG. The jury was presented with sufficient facts to determine if the demonstration by Mr. Clauser adequately resembled the wooden steps involved in the accident. Experiments showing general properties of materials are admitted without confining the experiments to conditions surrounding the litigated conditions. *Leonard supra,* 384 Pa.Super. at 9, n. 6, 557 A.2d at 747, n. 6. Whether a nail bends up or down or remains stable in a piece of wood is not a matter of such technical intricacy that requires a finding that the authentication requirement has not been fulfilled in this case. Mr. Clauser testified that he used wood of the same type as that in the staircase. Given the purpose of the demonstration, i.e., to show the effect on the nails of a wooden board breaking downward, we find that the conditions employed by Mr. Clauser were sufficiently similar to the actual occurrence to allow admission of this evidence.

The third issue for review is whether the trial court erred in bifurcating the trial at the close of the testimony. The court bifurcated closing argument so that the issues relating to liability were argued without reference to issues of damages. After closing arguments, the jury retired for deliberation of special interrogatories relating to liability. Since the verdict was in favor of the defendant-Hechinger and additional defendant-Taylor Ramsey and since the verdict on the cross-claim against Angelo Pascale was ruled barred by the statute of limitations,[2] the damages issues were never presented to the jury.

▮▮▮▮ Appellants argue on appeal that because both the liability and damage issues were pursued at trial with evidence admitted on both issues, it was an abuse of discretion to bifurcate at the closing argument stage of trial. Appellants recognize that bifurcation, pursuant to Pa.R.Civ.P. 213(b), is a matter of discretion of the trial court. *Coleman v. Philadelphia Newspapers, Inc.*, 391 Pa.Super. 140, 570 A.2d 552 (1990). Under Rule 213(b) bifurcation of any separate issue may be ordered by the court on its own motion in the furtherance of convenience. Bifurcation is strongly encouraged where separation of issues facilitates the orderly presentation of evidence and judicial economy. *Coleman, supra.* Where liability and damage issues are not interwoven, bifurcation may be used as a means to insure against taint of the jury through sympathy occasioned by knowledge of the severity of the injury. *Ptak v. Masontown Men's Softball League*, 414 Pa.Super. 425, 607 A.2d 297 (1992).

▮▮▮ The unusual aspect of the bifurcation in the instant case is its being ordered after presentation of evidence on both liability and damages. The trial judge reasoned that the jury's deliberation process would be simplified if it decided the liability issues first, and independent of, the damages issues. We do not conclude that the decision to bifurcate before closing argument was an abuse of discretion.

2. See discussion *infra.*

The liability questions were not interwoven with the damages questions. Rather than submit to the jury the complicated and potentially unnecessary law of damages and contribution among tortfeasors, the court limited consideration initially to the attribution of liability among the parties who were sued and counter-sued as defendants. Appellants have not persuaded us that the presentation of their case suffered prejudice as a result of this procedure. Their concern that the jury would speculate that there were no damages since the issue was not before them, is not substantiated. The judge instructed the jury on the law necessary to answer the four special interrogatories relating to liability. The judge told the jury that it was to apply only the rules of law upon which it was instructed by the court. Absent any support in the record, we do not find that the jury disregarded the court's instructions. There was no abuse of discretion in the restriction of closing arguments to liability questions only.

█ The fourth issue for review is whether the lower court erred in not conducting an assessment of damages hearing against Angelo Pascale. The lower court held that application of the statute of limitations on the claim against Angelo Pascale obviated the need for an assessment of damages. On appeal, Mr. Pascale argues that since the statute of limitations defense was not pled, he waived it.[3] The parties and lower court presumed throughout the trial that no recovery could be obtained against Mr. Pascale on the basis of the statute of limitations. The defect in not pleading the statute of limitations defense was first raised in appellants' amended motion for post-trial relief.

The lower court found that the amended post-trial motion was not timely filed. Additionally, it noted that throughout the trial, plaintiffs made no objection to the ruling that the statute of limitations barred the claim against Mr. Pascale. On the first basis of denial, appellants had ten days after the receipt of the trial transcript within which to file amended post-trial motions. The transcript was available on December

3. The injury occurred on February 16, 1987. Mr. Pascale was named in the cross-claim filed by Hechinger on May 30, 1989.

6, 1991. The amended motion was filed on January 8, 1991. This was in violation of Montgomery County Local Rule 252. Since the lower court treated the amended motion as untimely and did not address its contents, appellants' reliance upon *Kurtas v. Kurtas,* 521 Pa. 105, 555 A.2d 804 (1989) and *Com. v. Sheaff,* 518 Pa. 655, 544 A.2d 1342 (table) (1988) is misplaced. These two cases stand for the proposition that a trial court may overlook the late filing of an amended or supplemental post-trial motion and proceed to decide the merits of the issues raised in the late-filed motions. If this occurs, the issues contained in the amended or supplemental motions will not be treated as waived for appellate review purposes. Here, the lower court did not accept the untimely motions and did not address the merits. We find no abuse of discretion in the lower court's refusal to disregard appellants' failure to comply with the timing requirements of post-trial procedure.

Further, assuming *arguendo,* that the matter of the waiver of the statute of limitations defense were properly raised in the amended motion, it is without merit. The lower court allowed (defense) counsel for Mr. Pascale to raise the affirmative defense of the statute of limitations at trial. No other party objected to this. Therefore, the failure to raise the defense in the pleadings is a defect which has been waived. Since the lower court allowed pursuit of the defense at trial, its actions are tantamount to a tacit allowing of amendment of the pleadings. *Cf. Dilauro v. One Bala Avenue Associates,* 419 Pa.Super. 191, 615 A.2d 90 (1992) (lower court instruction to jury on defense of assumption of risk which was not raised in New Matter is considered court's permitting amendment of answer on its own motion); *Meridian Oil and Gas v. Penn Central Corporation,* 418 Pa.Super. 231, 614 A.2d 246 (1992) (lower court's allowing defendant to raise affirmative defense of collateral estoppel for first time at pre-trial conference treated as tantamount to allowing amendment of pleadings.) Therefore, the fourth issue on appeal is without merit.

The final issue is whether the lower court erred in not allowing testimony from appellants on the failure to warn or

provide assembly instructions. The lower court disallowed this testimony because this theory of recovery was not in the complaint. Appellants argue that their averments of defect in the complaint are broad enough to cover failure to warn and failure to provide assembly instructions. They point to paragraph 21 of the complaint as encompassing this claim:

21. Defendant is liable to plaintiffs for all their damages pursuant to § 402A of the Restatement, Torts Second in that the lumber was in a defective condition, unreasonably dangerous and without adequate warning to the purchaser or to the ultimate user, including plaintiffs.

Complaint at 4.

These general allegations are not sufficient to put the defense on notice that a defect in the nature of the failure to provide assembly instructions is being averred. The defect alleged in the complaint was the physical condition of the wood. Evidence of other theories of defect was properly excluded.

■■■ Appellants discuss the Uniform Contribution Among Joint Tortfeasors Act, 42 Pa.C.S. § 8322 *et seq.* in support of their claim that the issue of comparative causation should have been posed to the jury. Appellants overlook the fact that the jury was adequately charged on the theories of liability that had been properly pled and tried and that it rendered a verdict finding only one party tortiously liable. There was no issue of joint tortfeasor liability once the jury rendered a verdict finding Hechinger and Taylor Ramsey not liable in strict liability and Mr. Pascale liable 100% in negligence. No further inquiry on joint tortfeasor liability was necessary.

Judgment affirmed.