589 A.2d 260

**Bessie P. CLEMONS, Appellant,**

**v.**

**Michael A. TRANOVICH, M.D., Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 15, 1991.

Filed April 9, 1991.

428

Jay H. Feldstein, Pittsburgh, for appellant.

Patrick J. Shannon, Pittsburgh, for appellee.

Before ROWLEY, President Judge, and DEL SOLE and MONTGOMERY, JJ.

DEL SOLE, Judge:

This is an appeal from a Judgment entered in a medical malpractice case in which the jury found in favor of the defendant, doctor. Appellant, plaintiff in the underlying action, contends that the court erred in granting the defendant's motion for compulsory non-suit on the issue of informed consent and in refusing to allow her to establish her negligence claim based upon the theory of *res ipsa loquitur*. Finding merit to both of these contentions raised by Appellant, we vacate the Judgment and remand this matter for a new trial.[1]

---

**1.** Although Appellant raises as a third issue the propriety of the court's limitation on her cross-examination of an expert witness, in view of our decision to award a new trial, we decline to reach the merits of this claim.

Following surgery, known as a total right hip arthroplasty, Appellant's right foot became, as stated by the trial court, "essentially non-functional." She maintained at trial that her injuries were caused by damage to or severance of her sciatic nerve during surgery. Appellee, Dr. Tranovich countered by presenting evidence that Appellant's disability may have been related to a pre-existing disease of lupus from which she suffered, a seizure she had shortly after the surgery while she was in traction in recovery, or some other unknown and unpreventable cause. As a separate basis for recovery, Appellant also sought to establish that she was not informed of the risks of the surgery which she underwent. We will begin by first considering Appellant's allegations of error with regard to the trial court's decision to enter a non-suit on the issue of informed consent.

At trial Appellant admitted to signing a consent form but stated that the form gave her no indication that she was at any greater risk because of her lupus or that the surgery might result in the disabling condition from which she now suffers. She also testified that neither Dr. Tranovich nor any one else spoke to her to inform her of these risks. Appellant's counsel also called Dr. Tranovich to the stand. He testified as follows:

Q. Was she at risk, Doctor, for her foot going dead?

A. Certainly.

Q. And did you tell her that?

A. Not specifically foot.

Q. What did you tell her could go dead?

A. Well, the usual instructions or, if you will, say the pre-op instructions involve that any surgery is not 100 percent. There are certain risks.

The major risk in total hip arthroplasty, one, that it doesn't work, it loosened or falls apart; two, the second greater risk, it gets infected, and there is quote neurovascular damage or injury and that would be a kind of ballpark type of instruction when it's specifically addressed, one nerve or one artery, but is a general risk factor.

Q. That's a risk factor that applies in all total hip operations?

A. Yes.

Q. Was that risk any greater because she had lupus?

A. Yes, I would think so.

Q. Did you tell her the risk would be greater because she had lupus?

A. I didn't feel the risk was greater than that would need addressed ....

N.T. 1/23/90 at 18–19.

In reference to this testimony the trial court remarked "that it is clear that the defendant is saying that he did not believe that the increased risk due to lupus is something which proper medical practice requires informing a patient." Based upon this evidence the trial court concluded that Appellant had not established a cause of action for informed consent. However in reaching this conclusion the court looked to an incorrect rule of law. The trial court stated "the law on the subject as we understand it is that an expert must not only name the risk but also, and most importantly, must give his opinion that proper medical practice requires that the plaintiff be told about it." Absent such expert testimony and faced instead with testimony that the treating physician did not feel the risk was great enough to address, the court concluded that Appellant had not established a case on the issue of informed consent. Such is not the standard.

In Pennsylvania an expert opinion is not needed to demonstrate that the risk involved is of such a nature that it must be disclosed to a patient. In fact expert opinion concerning the standard of disclosure in the medical community is inadmissible. *Sagala v. Tavares*, 367 Pa.Super. 573, 533 A.2d 165, 167–168 (1987). Instead, a prudent patient standard has been created. In speaking of this standard the *Sagala* court stated:

Therefore, in determining whether a physician breached his duty to his patient, "the standard of care is not what a

reasonable medical practitioner would have done in the situation but whether the physician disclosed those risks which a reasonable man would have considered material to his decision whether or not to undergo treatment." *Festa, supra, [Festa v. Greenberg,* 354 Pa.Super. 346, 511 A.2d 1371 (1986)] at 511 A.2d at 1375. Materiality is established by a two step process. First the trier of fact must be supplied with expert information as to the nature of the harm and the probability of it occurring. However, it is the trier of fact, not the expert, who must decide the materiality of the risk involved and whether the probability of that type of harm is a risk which a reasonable patient would consider in rendering a decision on medical treatment. *Jozsa v. Hottenstein,* 364 Pa.Super. 469, 528 A.2d 606, 608 (1987).

*Id.,* 367 Pa.Superior Ct. at 578, 533 A.2d at 167.

As noted by the court in *Sagala,* to offer evidence of professional standards for disclosure would incorrectly invite "the jury to consider whether the physician acted in conformance with the customary practices of other physicians." *Id.* Because the trial court incorrectly focused on the expert opinion on the need for disclosure instead of the reasonable patient approach, and because Appellant offered evidence that she was not informed of the medically recognized risks of her surgery, including that which occurred, a jury question existed on the issue of lack of informed consent.

■ We reach this decision in spite of Dr. Tranovich's protests to the contrary based upon his assertion that Appellant only offered evidence of the risks involved in the procedure and neglected to offer evidence of alternative treatment other than surgery which was available to Appellant. In *Jozsa v. Hottenstein,* 364 Pa.Super. 469, 528 A.2d 606 (1987) *alloc. denied,* 518 Pa. 619, 541 A.2d 746 (1988), this court determined that it was not necessary in every case for the plaintiff to establish the risks attendant to the surgery and the alternatives and their particular risks. This position was reaffirmed by this court *en banc* recently

in *Millard v. Nagle,* 402 Pa.Super. 376, 587 A.2d 10 (1991). In the instant case Appellant offered expert testimony on the medically recognized risks of this particular surgery and her own testimony that she was not informed of these risks. This proof alone was sufficient to allow the jury to consider whether the type of identified harm, if it occurred, was a risk which a reasonable person in the position of this patient would consider in rendering a decision to undergo the medical procedure.

We turn next to Appellant's claim that the court erred in refusing to allow her to establish her claim of negligence based upon the doctrine of *res ipsa loquitur.* She specifically argues that she should have been permitted to ask her expert whether the injuries she sustained ordinarily occur in the absence of negligence and that she should have been permitted to have the jury instructed regarding *res ipsa loquitur.*

█ Appellant's expert opined that her sciatic nerve at the area of the hip had been functionally cut. In response to this testimony Appellant's counsel posed the following question to the expert: "Dr. Goodman, does this event ordinarily occur in the absence of ne[gligence]?" N.T. 1/23–29/90 at 115. An objection was raised to the question as it being beyond the scope of the expert's report and this objection was sustained.

Dr. Goodman in the relevant portion of his report stated:

In order for total nerve damage to have occurred, the nerve must have either been cut at the time of surgery or ligated, as simply compression or hematoma of the nerve would not have resulted in total paralysis.

Since I do not believe it is possible for the surgeon to have ligated the nerve during the operation, the only alternative explanation would be that the nerve was inadvertently cut. To cut a nerve during this procedure is evidence of substandard care.

Dr. Goodman's report gives the same response sought by Appellant's counsel at trial. To state that the cutting of the

434

nerve is evidence of "substandard care" is, in effect, stating that this event would not occur in the absence of negligence. The discrepancy between the expert report and the information sought by counsel at trial was not of such a nature which would prevent or mislead the defendant so that he would be unable to prepare an appropriate response. *Wilkes–Barre Iron v. Pargas of Wilkes–Barre*, 348 Pa.Super. 285, 502 A.2d 210 (1985). In sum, the trial testimony sought of the expert was within the fair scope of his report. *Id.*

 Appellant sought to elicit this testimony from Dr. Goodman to present her claim based upon *res ipsa loquitur*. In response to Appellant's post-trial motions on this issue the trial court issued an opinion in which it makes clear that it does not deem it appropriate to apply this doctrine to medical malpractice cases. In the words of the trial court to do so "would be a perfect example of carrying a good thing too far." However, Appellant is correct in asserting that *res ipsa loquitur* is applicable in a medical malpractice action. *Jones v. Harrisburg Polyclinic Hospital, et al.*, 496 Pa. 465, 437 A.2d 1134 (1981).

 The doctrine of *res ipsa loquitur* is an expression for a rule of evidence which will allow a jury to infer the existence of negligence and causation where the injury does not ordinarily occur in the absence of negligence. *Sedlitsky v. Pareso*, 400 Pa.Super. 1, 582 A.2d 1314 (1990). Thus, Appellant's request to question her expert as to whether her injuries would occur in the absence of negligence, was critical to establish her case. The court's failure to allow such evidence was in error and a new trial is the appropriate remedy. The fact that defense experts offered contrary evidence does not require a different result. "Where the plaintiff sustains his or her burden, the court must give an instruction on *res ipsa loquitur*, even if the defendant has produced a quantity of contrary evidence." *Id.*, 400 Pa.Superior Ct. at 5, 582 A.2d at 1316. In the instant case, on remand, Appellant can seek to satisfy the requirements of the Restatement (Second) of Torts § 328 D and meet her

burden of proof which is more clearly set forth in the Restatement (Second) of Torts, Comment e, Clause (a) Subsection (1). *Id.*

Judgment vacated. Case remanded for new trial. Jurisdiction relinquished.