## Catalano v. Rolling Hill Hospital

*Kenneth W. Richmond,* for plaintiff.
*Abbie R. Newman,* for defendant.

ACKERMAN, *J.,* April 10, 1996—After a trial by jury, a verdict was entered in favor of the plaintiff and against the defendant, Rolling Hill Hospital, in the sum of $160,700, as follows:

Wrongful Death Action—$700
Survival Action—$160,000

Defendant, Rolling Hill Hospital, filed a motion for post-trial relief in the nature of judgment n.o.v., new trial or remittitur, and after a response by the plaintiffs, review of briefs of the parties, argument and hearing, this court denied defendant's said motion for post-trial relief and entered judgment on the jury verdict as molded by uncontested delay damages in favor of the plaintiffs and against the defendant, Rolling Hill Hospital.

This appeal by the defendant, Rolling Hill Hospital, followed.

This court by order dated March 12, 1996 ordered the defendant, Rolling Hill Hospital, to file a concise statement of matters complained of on appeal on or before March 26, 1996; however, such statement was not filed until April 2, 1996 because counsel was "on trial." While this court does not believe there is justification for the late filing, it will review this matter on the merits.

The defendant, Rolling Hill Hospital, set forth the following matters complained of on appeal:

"(1) The verdict against the hospital is improper and against the weight of the evidence since plaintiffs failed to meet their burden of proving negligence.

"(2) The trial court erred in qualifying plaintiffs' expert witness, Dr. Marvin Aronson, as an expert in newborn nursery care.

"(3) The trial court erred in allowing Dr. Aronson to testify well beyond the scope of his pre-trial expert witness report.

"(4) The trial court erred in charging the jury, and in allowing this case to go to the jury, on the doctrine of res ipsa loquitur since plaintiffs failed to satisfy the requisite elements of the Restatement (Second) of Torts §328D.

"(5) The trial court erred in limiting defense counsel's examination of Nurse Rothenberger when counsel sought to extract rebuttal testimony from the nurse in response to testimony elicited from plaintiffs' expert witness, Dr. Aronson.

"(6) The trial court erred in failing to provide certain mandated jury instructions:

"(a) The trial court erred in failing to charge the jury that Dr. Feinstein, and all of the other mentioned pediatricians, were independent contractors of the Hospital and that Rolling Hill could not be held liable for any alleged physical harm caused to plaintiffs by the conduct of these independent contractors.

"(b) The trial court erred in failing to charge the jury that plaintiffs had the burden to prove, by expert testimony, standard of care, a deviation from the standard of care and causation and that plaintiffs could only recover if credible expert testimony established all of the requisite elements of plaintiffs' claim.

"(c) With regard to the doctrine of res ipsa loquitur, the trial court erred in failing to charge that (1) if the jury determined plaintiffs' complaints could have resulted without negligence, it must find in favor of defendant; (2) if there is insufficient evidence to eliminate other reasonable causes for the injury, it must find in favor of defendant; and (3) if the jury determined that there was conflicting expert testimony concerning the cause of plaintiffs' alleged injury and damages, it must find in favor of the Hospital.

"(d) With regard to damages, the trial court erred in failing to charge that: (1) in determining the nature and extent of injuries or damages, the jury must consider the nature and extent of the underlying condition; (2) plaintiffs have the burden to prove every element of damages or return a verdict minus such element of

damages; and (3) in a wrongful death action, there can be no recovery for the survivors' mental suffering.

"(7) The jury verdict in this case was so excessive as to warrant the granting of a new trial.

"(8) The jury verdict in this case was so excessive as to warrant the granting of a remittitur."

This court will review these matters in the following order:

### *The Trial Court Erred in Qualifying Plaintiffs' Expert Witness, Dr. Marvin Aronson, As an Expert in Newborn Nursery Care (Statement of Matters 2)*

While Dr. Marvin Aronson's specialty was as a pathologist which deals with the laboratory aspects of medicine (Tr. 5, 6, videotape examination, Aronson M.D.), his background and education was from Temple University School of Medicine in Philadelphia with an internship at Temple University Hospital. (Tr. 6, videotape examination, Aronson M.D.) He was moved as a qualified expert as a pathologist. (Tr. 13, videotape examination, Aronson M.D.) However, during his medical career, he worked in a newborn nursery as part of his medical school training and internship, but not since, in his professional capacity. (Tr. 19-20, videotape examination, Aronson M.D.)

This court permitted Dr. Aronson to give an opinion that the cause of death of the infant in this case was aspiration of milk (Tr. 31, videotape examination, Aronson M.D.), and he was permitted to explain that process to the jury. Included in the process of aspiration of milk was the procedure of burping the infant, holding him on a shoulder, patting the back. (Tr. 31-32, videotape examination, Aronson M.D.). Dr. Aronson's past medi-

cal training held a reasonable pretext to knowledge of the subject that was more extensive than a layman's. The weight to be given to Dr. Aronson's opinion was for the jury to determine. The decision to permit Dr. Aronson to testify in this respect did not constitute error.

*The Trial Court Erred in Allowing Dr. Aronson To Testify Well Beyond the Scope of His Pre-Trial Expert Witness Report (Statement of Matters 3)*

Dr. Aronson's expert witness report dated October 31, 1991, attached to settlement memorandum submitted by plaintiffs (see record) gives an opinion that:

"the medical cause of death is: aspiration of food and that the legal manner of death is: accident . . . The microscopic examination of the lungs clearly demonstrates that the aspiration took place prior to death since there was reaction of the lung tissue to the foreign material, a process which can take a minimum of one hour and might have been considerably larger.

"There is still a significant question as to why this baby suffered the fatal aspiration. Although the techniques usually used in hospital nurseries are careful, there is always the possibility that there was a lack of care in this particular instance. However, the fact is that the vast majority of infants in the world are cared for by mothers who are not only not educated in the technique of feeding, but who are also exhausted by the process of having given birth with no modern medical assistance whatever, and yet those infants survive for the most part, this very young stage of life."

The substance of this report is provided in the testimony of Dr. Aronson during his videotape examination at Tr. 38, 39, 40, 50, 51.

Counsel for defendant, Rolling Hill Hospital, suggests that it was improper for this court to permit Dr. Aronson to testify about reports provided by the defense expert, Dr. Dapena. However, that testimony dealt with the same issue set forth in Dr. Aronson's report, to wit: Aspiration of milk as a cause of death. (Tr. 40-45, videotape examination, Aronson M.D.)

In addition, this court properly permitted the reference by Dr. Aronson to Dr. Dapena's position on aspiration of milk as the cause of death, as rebuttal testimony in any event. No error was committed.

*The Trial Court Erred in Limiting Defense Counsel's Examination of Nurse Rothenberger When Counsel Sought To Extract Rebuttal Testimony From the Nurse in Response to Testimony Elicited From Plaintiffs' Expert Witness, Dr. Aronson (Statement of Matters 5)*

Katherine Rothenberger was Patient Care Manager (Head Nurse) at Bryn Mawr Hospital in charge of Neonatal Care Intensive Unit, Pediatric Unit and Newborn Nursery. (Tr. 68, 114, 8/9/95.) She was qualified as an expert in newborn nursery nursing. (Tr. 73, 8/9/95.) She testified, on direct, that a normal newborn has a normal gag reflect, causing clearing of the small amount of the wet burp. She further testified that she never had such a case where clearing did not occur related to her by other health professionals. (Tr. 95, 8/9/95.)

At Tr. 96 (8/9/95), Ms. Rothenberger was asked:

"Q. if an infant has food in its stomache [sic] during the course of CPR, cardiopulmonary resuscitation, the code we have been talking about, can that fluid go into the lungs of the child during that procedure?

"A. Yes."

At this point, counsel for plaintiffs objected on the basis that the question was far beyond the scope of the report of the witness and was not proper rebuttal.

This court ruled that the question and response were not proper rebuttal since the defendant, Rolling Hill, had Dr. Aronson's report prior to the time the nurse's report was provided and could have responded in the nurse's report. (Tr. 98, 8/9/95.)

Accordingly, the issue was beyond the scope of the nurse's report. However, a review of the record makes it clear that even if error had occurred in this regard, it was harmless because Nurse Rothenberger had already testified on this matter and the additional question was merely repetitive. No error was committed.

*The Trial Court Erred in Charging the Jury and in Allowing This Case To Go To the Jury on the Doctrine of Res Ipsa Loquitur Since Plaintiffs Failed To Satisfy the Requisite Elements of the Restatement (Second) of Torts §328D (Statement of Matters 4)*

A review of the record reveals the following relevant facts:

This is a medical malpractice action based upon an allegation that plaintiffs' first-born son expired in a hospital nursery on February 17, 1989. The child had been found cyanotic at 5 a.m. on that date by nursery attendant Mary Jo Thompson R.N. after a normal delivery 26 hours earlier. The hospital records (P-1) showed that the infant had been born with a normal "APGARS" scale following a typical pregnancy. It was not disputed that the infant had been entrusted completely to the hospital staff for care five hours prior to his death. The preliminary diagnosis, according to

the record was "Demise 2 Degree Aspiration. Apparent SIDS." The aspiration was confirmed by an autopsy of Dr. A. Christou M.D. who reported: (1) aspiration (milk); (2) patchy aspiration pneumonia, lungs; (3) full-term newborn male approximately 26 hours old.

The plaintiffs' expert was a former Philadelphia Medical Examiner who is board-certified in pathology. He testified on videotape (Tr. 24) that he has been involved in the investigation of newborn deaths, including those categorically referenced as SIDS (Sudden Infant Death Syndrome) deaths. Dr. Aronson testified that he examined the medical record and the deposition of the nursery attendant and concluded that the hospital reference to SIDS as an explanation for this infant's death was meaningless. (Tr. 30.) SIDS as a cause of death is used only when the autopsy fails to reveal any significant findings that would lead to a cause of death, and the cause of death had been identified as "aspiration of milk."

At Tr. 38, Dr. Aronson concluded that the infant's death was NOT due to natural or intentional causes, but that the death was due to *accident.* During cross-examination, at Tr. 50, 52, 54, 61 and 62, the defense attempted to have plaintiffs' pathologist identify a specific act of negligence, *i.e.,* putting an infant down on its side or back after feeding (Tr. 50-51); putting an infant face down (Tr. 52); feeding or burping improperly (Tr. 62); yet, Dr. Aronson consistently avoided any identification of any specific conduct that could represent a departure from a standard of care. In conclusion, Dr. Aronson stated, "the fact is that the vast majority of infants in the world are cared for by mothers who are not only not educated in the technique of feeding, but who are exhausted by the process of having given birth without modern medical assistance." (Tr.

50-51.) "And in this instance, this particular event of aspiration of milk is something which is known to be able to happen to newborn infants and to even more mature infants, and that modern science and modern medicine should have provided a system to prevent it from happening. I don't believe that I have ever in my experience had a case where death was due to aspiration of milk or food of this type without any underlying apparent cause. . . ." (Tr. 38-39.)

Beginning with the appeal in the matter of *Jones v. Harrisburg Polyclinic Hospital,* 496 Pa. 465, 437 A.2d 1134 (1981), Pennsylvania has adopted the doctrine of res ipsa loquitur in medical malpractice actions. The doctrine is an expression for a rule of evidence which will allow a jury to *infer* the existence of negligence and causation where the injury does not occur in the absence of negligence. *Sedlitsky v. Pareso,* 400 Pa. Super. 1, 582 A.2d 1314 (1990). The fact that defense experts offered contrary evidence does not require a different result. "Where the plaintiff sustains his or her burden, the court must give an instruction on res ipsa loquitur, even if the defendant has produced a quantity of contrary evidence." (emphasis in original) *Clemons v. Tranovich,* 403 Pa. Super. 427, 434, 589 A.2d 260, 263 (1991), citing *Sedlitsky, supra* at 5, 582 A.2d at 1316.

Under the Restatement (Second) of Torts §328D, as cited in *Leone v. Thomas,* 428 Pa. Super. 217, 220, 630 A.2d 900, 902 (1993):

"(1) It may be *inferred* that harm suffered by the plaintiff is caused by negligence of the defendant when

"(a) the event is of a kind which ordinarily does not occur in the absence of negligence;

"(b) other responsible causes including the conduct of the plaintiff and third persons are sufficiently eliminated by the evidence; and

"(c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

"(2) It is the function of the court to determine whether the inference *may* reasonably be drawn by the jury, or whether it *must necessarily* be drawn.

"(3) It is the function of the jury to determine whether the inference is to be drawn in any case *where different conclusion [sic] may be reached.*" (emphasis added)

Nothing in the Restatement dealing with res ipsa loquitur requires the plaintiff invoking the doctrine to identify a specific standard of care, a specific breach of duty or even causation to a reasonable degree of medical certainty. Indeed, the precise identification of either a specific departure from a standard of care, or a negligent (causal) mechanism for the harm plaintiff suffered would have actually prevented the doctrine from being applied to the facts of the case.

As in the *Leone v. Thomas* case *supra,* the care of the Catalano infant was under the guidance and exclusive control of the defendant:

"It is precisely this type of case, one which an unconscious patient is unable to aver the specific conduct which caused her injury, in which res ipsa loquitur applies. . . . In such a case, the jury is permitted to reasonably infer both negligence and causation from the occurrence of an unusual event and the defendant's relation to it. Restatement (Second) of Torts §328D, comments (b), (g)." (citations omitted) (emphasis in original) *Id.* at 222, 630 A.2d at 902.

Dr. Aronson's testimony, reconsidered now against the legal requirements set forth above fall quite neatly

within the doctrine. The exclusive control of Rolling Hill Hospital over the health and well-being of infant Catalano is not disputed. Plaintiffs' expert evidence established that the event of aspiration and the inflammation and pneumonia that obviously preceded death was a highly unusual occurrence that was an accident that could have been caused by failure to burp swallowed air, a failure in positioning or simply a failure to attend to the distress of the infant's suffocation. Thus, under the rulings of the court in *Leone,* the case was properly submitted to the jury as a *permissible* inference (Tr. 83-84, 8/10/95) but not a required inference. "An inference of res ipsa loquitur does not disappear in the face of contrary evidence." *Sedlitsky v. Pareso, supra* at 5-6, 582 A.2d at 1315.

Defendant Rolling Hill did not refer to *Leone, supra,* in its brief nor did it deal with that applicable case in its oral argument.

Nothing in the *Leone* opinion requires that expert testimony provide evidence of specific conduct. The holding requires there be evidence that the occurrence was an *unusual* event. *(Leone, supra* at 221, 630 A.2d at 902.) The Superior Court in *Leone* specifically rejected the trial court's imposition of a requirement that the plaintiffs prove that the injuries could not occur in the absence of negligence. Correspondingly, the *Leone* trial court's requirement that the plaintiffs establish the impossibility of other non-negligent causes for the injury was characterized as error. Once it can be inferred from the circumstances that negligence is a more probable explanation for the injury, the court must leave the question for the jury even though the court itself would not find negligence. *Id.* at 222, 630 A.2d at 902.

The thrust of Dr. Aronson's testimony was that he did not know of any other reasonable causes besides negligence in bringing about Baby Catalano's death.

A review of the record makes it clear that the doctrine of res ipsa loquitur was applicable to the facts of this case and that a charge to the jury was required. All of the elements required under Restatement (Second) of Torts §328D have been satisfied.

*The Verdict Against the Hospital Is Improper and Against the Weight of the Evidence Since Plaintiffs Failed To Meet Their Burden of Proving Negligence (Statement of Matters 1)*

Utilizing the doctrine of res ipsa loquitur, it is clear that the plaintiffs met their burden of proving negligence and the verdict was proper and not against the weight of the evidence.

Thus, Statement of Matters 1 is without merit.

*The Trial Court Erred in Failing To Provide Certain Mandated Jury Instructions (Statement of Matters 6)*

This court has reviewed its instructions to the jury set forth in Tr. 45-105, 8/10/95.

This court did instruct the jury that the defendant, Rolling Hill Hospital, was only responsible for the acts of its employees performed within the scope of that employee's employment, and specifically noted that the nurses in this case were the employees to be considered. It was clear during the trial of this case that the physicians were not employees of the Hospital. Statement of Matters 6(a) is without merit.

Statement of Matters 6(b) was properly not given as stated and the instruction as to res ipsa loquitur

was clearly provided to the jury with the burden on the plaintiffs of all issues of liability properly set forth.

Statement of Matters 6(c) was properly covered in the charge on res ipsa loquitur.

Statement of Matters 6(d) was not a required charge as stated and was properly covered by the instruction on damages. This court specifically charged as to the inclusive elements of damages in a wrongful death action and was not required to additionally set forth those elements not included. No error is present in the jury charge.

Finally, Statement of Matters 7 and 8 question the verdict as excessive. This was a death case, and this court was not shocked by an award of $160,700 for the death of this infant. The verdict was not excessive and no error is present here.