## Lawler v. Stefanyszyn

*James J. McHugh Jr.,* for plaintiffs.
*Edwin G. Scherlis,* for defendants.

ACKERMAN, *J.,* October 21, 1998—After a nine-day jury trial, that jury rendered a verdict in favor of the plaintiff, Taylor Lawler, a minor, and against the defendant, Mary Stefanyszyn M.D., in the sum of $1,250,000 (verdict molded by this court to include that sum of $1,250,000 in favor of plaintiff, Taylor

Lawler, a minor, against defendant, Annesley, Flanagan, Fischer, Stefanyszyn and Associates, and further molded by addition of delay damages, not contested, for an additional $143,767.12 and a total molded verdict of $1,393,767.12. A punitive damage claim was rejected by the jury, and parent-plaintiff's claim in their own right was dismissed).

Defendants, Mary Stefanyszyn M.D. and Annesley, Flanagan, Fischer, Stefanyszyn and Associates, filed post-trial motions in the nature of a motion for new trial and in the alternative the granting of a remittitur based upon the alleged excessiveness of the verdict.

After review of the post-trial motions filed by the said defendants, plaintiff's brief in opposition thereto, argument and hearing, this court denied all post-trial motions, molded the jury verdict as noted above, and entered judgment on the molded verdict.

Defendants filed the instant notice of appeal.

At the age of 5, Taylor Lawler was discovered to have a cancerous tumor behind her right eye, for which she underwent chemotherapy and radiation. N.T. 5-13-98 pp. 109-110. The treatment was successful in eradicating the tumor. N.T. 5-13-98 p. 110; 5-15-98 p. 37. However, the radiation destroyed the functional vision of her right eye and retarded bond development on the right side of her face. N.T. 5-13-98 pp. 110-11, 179; 5-15-98 pp. 37, 39.

When Taylor was 11 years old, the defendant, Dr. Stefanyszyn, recommended that Taylor's right eye be removed and replaced with an implant. N.T. 5-14-98 pp. 152-54; 5-15-98 p. 40. She advised Taylor and her parents that an implant would allow the two eyes to move together and give Taylor a normal appearance. N.T. 5-14-98 pp. 154-55; 5-15-98 pp. 40-42, 45-46.

A nonsurgical alternative to the evisceration and implant would have been a scleral shell. N.T. 5-13-98 pp. 91-93, 97-98, 101-104, 148; 5-14-98 p. 107. That would have been akin to a hard contact lens, with an eye painted on it, which Taylor would have been able to insert by herself. *Id.* Assuming the shell was successful, the multiple surgeries to remove Taylor's right eye and insert and cover the implant would not have been necessary. N.T. 5-13-98 p. 104.

Dr. Stefanyszyn never advised the Lawlers that a nonsurgical alternative existed. N.T. 5-13-98 pp. 90, 148, 150-51; 5-14-98 p. 171. She also failed to tell them that an implant could not succeed without an adequate blood supply and, because the supply of blood to Taylor's right eye had been seriously compromised by the radiation treatments, an arterial transplant was required before an implant should be attempted or the grafts were likely to fail. N.T. 5-13-98 pp. 119-20, 122-27; 5-14-98 pp. 143, 171; 5-15-98 pp. 42-49. She never warned them that graft failure was a risk of the procedure. N.T. 5-13-98 pp. 122-26; 5-14-98 p. 171; 5-15-98 pp. 48-49. She also failed to tell them that the implant would not succeed in producing a normal appearance because the movement of Taylor's right eye was severely impaired. N.T. 5-13-98 pp. 90, 113-17, 119-20. Lastly, Dr. Stefanyszyn told them that Taylor would require three or four operations and never warned them that eight, 10 or even 20 operations might actually be required. N.T. 5-14-98 pp. 128, 156, 168; 5-15-98 pp. 45-47, 64-65; 5-19-98 pp. 112-13, 115.

On December 4, 1991, Dr. Stefanyszyn eviscerated Taylor's right eye and inserted an implant, which she covered with grafts taken from inside Taylor's mouth. N.T. 5-13-98 pp. 96, 128-30; 5-14-98 p. 167; 5-15-98 pp. 40-41. The grafts failed, due to the lack of an ade-

quate blood supply, and the implant was exposed. N.T. 5-13-98 pp. 130-31; 5-14-98 p. 158; 5-15-98 pp. 48-51. On December 21, 1991, Dr. Stefanyszyn was compelled to operate on Taylor again to repair the situation. N.T. 5-13-98 pp. 130-38; 5-15-98 pp. 50-51.

Without an arterial transplant, this process continued to repeat itself. By February of 1992, the grafts had died again, exposing the implant. N.T. 5-13-98 pp. 139-40; 5-15-98 pp. 51-52. On May 11, 1992, Dr. Stefanyszyn operated on Taylor again. N.T. 5-13-98 pp. 139-43; 5-15-98 p. 52. By June, the implant was exposed again. N.T. 5-13-98 pp. 143-44; 5-15-98 p. 152. On August 26, 1992, Dr. Stefanyszyn operated on Taylor again. N.T. 5-13-98 pp. 143-48; 5-15-98 p. 52. By September, the implant was exposed again. N.T. 5-13-98 pp. 155-56; 5-15-98 p. 54.

Dr. Stefanyszyn referred Taylor to Dr. Bartlett, a pediatric plastic and reconstructive surgeon. N.T. 5-13-98 p. 158; 5-15-98 pp. 54, 104-105. On February 28, 1994, Dr. Bartlett performed an arterial transfer, as well as surgery to reconstruct her right eyesocket, forehead and temple. N.T. 5-15-98 pp. 55, 110, 116-17.

It was undisputed that his surgery was successful. N.T. 5-15-98 pp. 117-18 (testimony of Dr. Bartlett); N.T. 5-19-98 pp. 81, 86 (testimony of Dr. Stefanyszyn). However, in harvesting bone from the left side of Taylor's face (for use in the reconstruction of the right side of her face), Dr. Bartlett left behind two sponges. N.T. 5-15-98 pp. 119-20, 151. These sponges caused Taylor to develop an infection in her left temple, which was resolved when another surgeon removed the sponges four months later. N.T. 5-15-98 pp. 151, 157-58; 5-19-98 pp. 86-87.

Taylor had three additional operations after that. N.T. 5-15-98 p. 55. The operations finally stopped when

the Lawlers learned from Dr. Iliff that no matter how many operations Taylor had, they could never give her a pleasing appearance. N.T. 5-14-98 p. 60.

The plaintiffs subsequently brought this action. They alleged that Dr. Stefanyszyn was negligent in failing to attempt a nonsurgical alternative prior to removing Taylor's right eye and in performing multiple surgeries upon her right eyesocket without first ensuring that there was an adequate blood supply. They further alleged that Dr. Stefanyszyn had failed to warn them of the risks of the surgeries she performed, including the risk of graft failure, the likelihood that the implant would not succeed without an adequate blood supply and because the ability of Taylor's right eye to move was severely impaired and that eight or 10 operations or more might be necessary.

Separate allegations of negligence were set forth with respect to Dr. Bartlett. The plaintiffs alleged that he was negligent in leaving the two sponges in Taylor's left forehead and that his negligence had caused her to suffer an infection there and necessitated an additional procedure by a third physician to remove the sponges.

The plaintiffs settled with Dr. Bartlett shortly before trial. This settlement was *not* on a joint tort-feasor basis. N.T. 5-12-98 p. 2. Dr. Bartlett made no effort to preserve any right to assert a claim for contribution or indemnity from Dr. Stefanyszyn *(id.)* and Dr. Stefanyszyn did not attempt to plead a cross-claim against Dr. Bartlett.

At the conclusion of trial, the parties agreed that the jury would be instructed that Dr. Stefanyszyn could not be held responsible for the subsequent injuries caused by Dr. Barlett. N.T. 5-20-98 pp. 2-3. This court stated:

"It is my understanding that, Mr. Scherlis, you indicated to the court that I did not have to charge the

jury or talk about Doctor Bartlett's negligence in apportioning responsibility as long as they would be charged that they cannot attribute any injuries that the plaintiff sustained as a result of Doctor Bartlett's operation, to wit, the infections that the plaintiff sustained because of the leaving of the two sponges in the face area of the plaintiff during surgery, as long as the jury [is] properly instructed in that regard." N.T. 5-20-98 pp. 2-3.

On N.T. 5-20-98 p. 4, counsel for defendants, Mr. Scherlis, stated, "That's fine, your honor."

Defense counsel told the jury during his closing argument that Dr. Bartlett's surgery had nothing to do with the operations performed by Dr. Stefanyszyn:

"Doctor Barlett's surgery was necessary although *it didn't have anything to do with what Mary Stefanyszyn did or didn't do.*" N.T. 5-20-98 p. 90. (emphasis added)

Thereafter, the court instructed the jury, as agreed (see *supra,* and N.T. 5-19-98 pp. 146-49, both inclusive), that Dr. Stefanyszyn could not be held responsible for the injuries caused by Dr. Bartlett:

"Also I wanted you to understand that in determining damages in this case, you are not to attribute the injuries the plaintiff received as a result of Doctor Bartlett's surgery. If you recall, the plaintiff had an infection. The infection was caused by leaving two sponges in the plaintiff at the time of Doctor Bartlett's surgery. These injuries that she experienced as a result of Doctor Bartlett's surgical process are in no way to be attributed to the defendant in this case and may not be utilized by you in determining the amount of damages that the plaintiff has sustained for which the defendant in this case, Doctor Stefanyszyn, is liable. That is, of course, only if you get to damages in this case." N.T. 5-20-98 pp. 173-74.

This instruction removed any basis for Dr. Stefanyszyn to assert a claim for contribution or indemnity. It clearly advised the jury that the only injuries for which it could hold Dr. Stefanyszyn liable were those she had caused Taylor to suffer.

On post-trial motion, defendants argue that this court erred by failing to keep defendant Bartlett in the case and by not allowing counsel for defendant to examine witnesses regarding the allegations of the complaint against the dismissed defendants.

The defendants, by their express agreement made freely and voluntarily with counsel for the plaintiff and this court *(supra)* that the jury would be instructed that it could not assess damages against those defendants for the harm caused by Dr. Bartlett, expressly and effectively waived all claims asserted in its post-trial motion relating to the dismissed defendant, Dr. Bartlett, including any alleged error relating to claims by the only other dismissed defendants, CHOP and Children's Surgical Associates, against Dr. Bartlett. The *only* reason asserted by defendants, Stefanyszyn M.D. and Annesley, Flanagan, Fischer, Stefanyszyn and Associates, for alleged error by this court in failing to keep defendants, CHOP and Children's Surgical Associates, in the case was the inability to introduce those dismissed defendants' allegations *against defendant Bartlett,* that assertion has also been waived for the same reason.

Next, defendants argue that this court committed error by admitting out of court remarks by a Dr. Iliff that were hearsay and highly prejudicial to Dr. Stefanyszyn.

This court believes that it acted within its discretion in permitting the plaintiffs to cross-examine Dr. John D. Bullock, Dr. Stefanyszyn's expert witness, with a report Bullock had reviewed and identified in his own report.

On direct examination, defense counsel presented Dr. Bullock with a hypothetical question which asked him to assume that "although additional procedures were necessary," Taylor's prognosis for "a good cosmetic effect" was "good." N.T. 5-14-98 p. 56. Relying upon that assumption, Dr. Bullock testified that Dr. Stefanyszyn's treatment of Taylor did not fall below the standard of care. N.T. 5-14-98 pp. 56-82. It is clear that the defense wanted the jury to infer from Dr. Bullock's testimony that Dr. Stefanyszyn had chosen a course of treatment which had a good likelihood of achieving a pleasing cosmetic result and that, with a few additional procedures, this result could still be achieved.

On cross-examination, the plaintiff attempted to refute that inference. Dr. Bullock testified that his opinions were "all based on the hypothetical question," as well as "my review of the records," among other matters. N.T. 5-14-98 p. 86. Those "records" included a letter Dr. Iliff wrote the plaintiffs following his examination of Taylor. N.T. 5-14-98 p. 119. Indeed, Dr. Bullock specifically stated in his report that he had reviewed this letter. N.T. 5-14-98 p. 120.

Dr. Iliff recommended against further surgery. N.T. 5-14-98 p. 124. He explained in his report that "she still would have immobile lids with no blink or prosthesis motion" (N.T. 5-14-98 p. 122) and that the "ultimate result . . . would continue to be a disappointment for her and her family." N.T. 5-14-98 p. 124.

Dr. Bullock reluctantly acknowledged that this was so. He admitted that any motion of Taylor's eyelids would be "restricted" at best. N.T. 5-14-98 p. 122. While he disagreed with Dr. Iliff's recommendation to forego further surgery (N.T. 5-14-98 p. 124), he acknowledged that Dr. Iliff was correct that Taylor "would need several

operations to achieve any significant improvement" (N.T. 5-14-98 p. 122) and that she and her family would still find the ultimate result disappointing. N.T. 5-14-98 p. 124.

The plaintiff's use of Dr. Iliff's report was a legitimate attempt to diminish the impact of direct examination and, as such, entirely proper. Accordingly, defendants' claim that this court abused its discretion in allowing the plaintiff to so use Dr. Iliff's report is meritless.

The authorities offered by the defendants are inapposite to the instant case which involves the issue of proper cross-examination.

The defendants next claim that this court failed to properly instruct the jury with regard to informed consent.

Dr. Stefanyszyn asserts that this court was required to instruct the jury in accordance with the Medical Malpractice Act of 1996, P.L. 776, no. 135, §10, 40 P.S. §1301.811-A(d). That provision was an attempt by the legislature to change the substantive law of this Commonwealth and override *Gouse v. Cassel*, 385 Pa. Super. 521, 561 A.2d 797 (1989), *aff'd*, 532 Pa. 197, 615 A.2d 331 (1992), by requiring a patient to prove that the undisclosed information would have been a substantial factor in her decision whether to undergo surgery. It provides:

"A physician is liable for failure to obtain the informed consent only if the patient proves that receiving such information would have been a substantial factor in the patient's decision whether to undergo a procedure set forth in subsection (a)."

According to Dr. Stefanyszyn, this court was required to apply the statute retrospectively to a cause of action which arose years before the statute came into effect.

She does not cite any supporting authority for this proposition, however.

No such authority exists. The Statutory Construction Act of 1972, P.L. 1339, no. 290, §3, 1 Pa.C.S. §1926 specifically provides that statutes shall *not* be construed to apply retroactively absent clear language to the contrary:

"No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." This provision has been construed to apply to substantive rights. *Misitis v. Steel City Piping Co.,* 441 Pa. 339, 272 A.2d 883 (1971).

The Medical Malpractice Act does not state that the statute shall apply retroactively, and Dr. Stefanyszyn does not contend otherwise. It also cannot be disputed that the amendment relied upon by the defendant is substantive in nature.[1] It imposes a new legal burden on the plaintiff, which did not exist at common law, to demonstrate causation. See *Gouse.*

Because the amendment implicates the plaintiff's substantive right to recovery, this court properly declined to give it retroactive effect. This court correctly held that the controlling law with respect to this case is that which was in effect when the plaintiff's cause of action arose. *Bell v. Koppers Co. Inc.,* 481 Pa. 454, 458, 392 A.2d 1380, 1382 (1978) ("when substantive rights are involved, the applicable law must be that

---

1. The right of recovery is a substantive right which is implicated when the retroactive application of a statute would impose a new legal burden on a past transaction or occurrence. *McMahon v. McMahon,* 417 Pa. Super. 592, 601, 612 A.2d 1360, 1364 (1992). In contrast a procedural statute merely establishes a method for enforcing rights but has no impact on the claimant's legal entitlement to relief. *Page's Department Store v. Velardi,* 464 Pa. 276, 283 n.5, 346 A.2d 556, 560 n.5 (1975).

which is in effect at the time the cause of action arises;" statutes "altering substantive rights" will not be given retroactive effect) See also, *Lykins v. W.C.A.B. (New Castle Foundry),* 552 Pa. 1, 713 A.2d 77, 79 (1998) (Nigro, J. concurring). ("The Statutory Construction Act provides that when substantive rights are involved, the law in effect at the time the cause of action arises controls.")

Not only was this court's ruling correct, but any error would not entitle the defendant to a new trial. The challenged instruction pertained solely to the issue of informed consent. However, the jury separately determined that the plaintiffs were entitled to recover based upon Dr. Stefanyszyn's professional negligence. This finding was amply supported by the evidence. Accordingly, the outcome of the trial would have been the same and a new trial should not be ordered. *Walsh v. Kubiak,* 443 Pa. Super. 284, 296, 661 A.2d 416, 421-22 (1995), *appeal denied,* 543 Pa. 716, 672 A.2d 309 (1996) (error with respect to evidentiary ruling affecting one theory of liability did not support new trial where jury also found for plaintiff on a separate theory of liability).

The defendant's complaint with regard to the other statutory provision is also without merit. Dr. Stefanyszyn contends that the court should have charged the jury on the following provision from the Medical Malpractice Act of 1996:

"The physician is entitled to present evidence of the description of that procedure and those risks and alternatives that a physician acting in accordance with accepted medical standards of medical practice would provide." 40 P.S. §1301.811-A(b).

This amendment, too, was intended to effect a change in the substantive law of this Commonwealth. At com-

mon law, expert opinion concerning the standard of disclosure in the medical community was inadmissible. *Clemons v. Tranovich,* 403 Pa. Super. 427, 431, 589 A.2d 260, 262 (1991), *appeal denied,* 530 Pa. 630, 606 A.2d 900 (1992). Because the amendment changes substantive law and impacts on the plaintiffs' legal entitlement to relief and the legislature did not provide that it should be applied retroactively, this court correctly declined to give it retroactive effect. *Bell.*

The defendants further claim that this court erred by instructing the jury that doctors are subject to a dual standard of conduct.

Dr. Stefanyszyn objects to "the court's introducing the ordinary care standard" and describing the standard of care imposed upon physicians as "dual." Defendant's brief p. 13. At the same time, she acknowledges "that juries are normally instructed that a doctor must have the same knowledge and skill and exercise the care exercised in the profession and must also exercise the care of a reasonable person, as this court instructed the jury."

The fact is that there *is* a dual standard of care and that ordinary care is one of the two standards. A plaintiff in a medical malpractice action is obligated to prove *either* that the defendant failed to employ the skill and knowledge required of a medical professional *or* the care and judgment of a reasonable person:

"[T]he burden of proof is upon the plaintiff to prove either (1) that the physician did not possess and employ the required skill or knowledge or (2) that he did not exercise the care and judgment of a reasonable man in like circumstances . . . ." *Smith v. Yohe,* 412 Pa. 94, 99, 194 A.2d 167, 170 (1963). Accord *Grubb v. Albert Einstein Medical Center,* 255 Pa. Super. 381, 391, 387 A.2d 480, 485 (1978) ("The plaintiff in a

malpractice action must prove either that (1) the physician did not possess and employ the required skill and knowledge, or (2) that he did not exercise the care and judgment of a reasonable man in like [circumstances]"); *Ragan v. Steen,* 229 Pa. Super. 515, 521, 331 A.2d 724, 727-28 (1974) (the plaintiff "must prove either that the physician did not possess or employ the skill and knowledge required to effect a cure, or that he did not exercise the care and judgment of a reasonable man under like circumstances").

Thus, there is no error in this regard.

Finally, defendants assert that the verdict was excessive and required either a new trial or, alternatively, a grant of remittitur.

The verdict rendered by this jury did not shock the conscience of this court.

The plaintiffs introduced substantial evidence that Taylor Lawler endured multiple unnecessary and permanently disfiguring operations that turned her into an object of derision and substantially impaired her adolescence. These injuries were manifested by objective physical evidence: the medical records documenting all the surgeries she endured and the photographs showing the worsening of her appearance.

The jury was not swept away by passion or prejudice. It took the jury a day and a half to reach its verdict. N.T. 5-21-98; 5-22-98. Furthermore, although the jury was given the opportunity to assess punitive damages, it declined to do so. N.T. 5-22-98 p. 36. Under these circumstances, it is clear that the jury acted with due deliberation and there is no basis for interfering with the jury's award.

There is no merit in any of defendants' post-trial motions.