661 A.2d 416

**Samuel WALSH, Joanne Walsh, Appellees,**

**v.**

**Henrietta KUBIAK, Executrix, of the Estate
of Richard Kubiak, M.D., Appellant.**

Superior Court of Pennsylvania.

Argued May 10, 1995.

Filed July 20, 1995.

Lawrence G. McMichael, Philadelphia, for appellant.

Barbara A. Axelrod, Philadelphia, for appellees.

Before ROWLEY, P.J., and WIEAND, McEWEN, CIRILLO, DEL SOLE, KELLY, POPOVICH, FORD ELLIOTT and SAYLOR, JJ.

SAYLOR, Judge:

This is an appeal from a judgment entered on a jury verdict in favor of Appellee, Samuel Walsh, in a medical malpractice action brought against decedent, Richard Kubiak, M.D.[1] We affirm.

Samuel Walsh, a thirty-five year old ironworker and welder, began experiencing back pain and weakness in his legs while working at a job site in November of 1984. When Walsh's symptoms increased in severity, he sought treatment from a chiropractor, who referred him to Dr. Richard Kubiak, an orthopedic surgeon. Dr. Kubiak first examined Walsh on November 15, 1984, and expressed the concern that Walsh might have a bulging disk. Accordingly, Dr. Kubiak recommended that Walsh undergo a myelogram in order to determine the source of the pain. On December 5, 1984, Walsh was admitted to Nazareth Hospital; however, Dr. Kubiak apparently was unable to successfully complete the myelogram. Walsh did undergo a CAT scan, which indicated that he did not have a herniated disk, but only a mildly bulging disk. During this initial period of hospitalization, Walsh's condition

---

1. Dr. Kubiak died shortly after the complaint was filed and his wife, Henrietta Kubiak, was substituted as the defendant in her capacity as executrix of his estate. It is Henrietta Kubiak who is the appellant in this action.

improved substantially and he was discharged to be treated as an outpatient.

Dr. Kubiak continued to treat Walsh on an outpatient basis until April 23, 1985, when Walsh was readmitted to the hospital for a second myelogram due to the recurrence of his pain. Although Dr. Kubiak was again unable to perform the myelogram successfully because he had improperly injected the dye, he kept Walsh in the hospital for observation. Dr. Kubiak requested a consultation from Dr. Scogna, a neurosurgeon, who observed Walsh on April 24, 1985. Dr. Scogna noted that Walsh's sensory and motor responses and coordination were good and that his condition had significantly improved following bed rest. Accordingly, Dr. Scogna recommended in his consultation report that Walsh be observed as an outpatient on a continuing basis and that no surgery be performed at that time.

On April 30, 1985, Dr. Kubiak performed a lumbar laminectomy on Walsh, whereby disc material and some bone were removed from Walsh's lower back. Prior to the surgery, Walsh was not informed of the material risks involved in the operation or of any non-surgical alternatives, nor was he informed of the type of operation which he was to undergo; rather, Dr. Kubiak simply informed Walsh that he was going to perform exploratory surgery, assuring him that the operation would be "a piece of cake" and that he would be "up and walking around the next day." Although the hospital records indicate the existence of a signed consent form, the notes on Walsh's patient chart reveal that as of the early morning hours on the day of the surgery, no consent form had been signed, and the record reveals that the consent form which was eventually executed was signed at a time when Walsh would have already received a pre-operative tranquilizer.

Following the operation, Walsh experienced difficulty with his bladder and bowel functions, increased pain in his back and legs, and sexual dysfunction. Although Walsh eventually gained more control over his bladder function, his other symptoms persisted and he was unable to return to work.

Consequently, Walsh and his wife [2] commenced suit against Dr. Kubiak in April, 1986; however, Dr. Kubiak died of cancer a few days after the complaint was filed and his wife, the appellant in this action, was substituted as a party in her capacity as the executrix of Dr. Kubiak's estate.

Walsh's action was premised upon three theories: (1) Dr. Kubiak's negligence in deciding to perform the surgery rather than following a more conservative course of treatment; (2) Dr. Kubiak's negligent performance of the surgery; and (3) Dr. Kubiak's failure to obtain Walsh's informed consent to perform the surgery. The parties began exchanging expert medical reports in March of 1987. At that time, Walsh supplied Appellant with the expert report of Dr. Romy, who opined that Dr. Kubiak had negligently performed the surgery. In January of 1991, Appellant supplied Walsh with the expert report of Dr. Murtagh, who had reviewed Walsh's x-rays and medical records and had concluded:

> [t]his is an accepted technique for this kind of surgery and represents current surgical practice.... It is evident that the bladder and bowel impairment is secondary to injury to the L5 nerve root, incurred as a result of perhaps some traction on the nerve root and the presence of some bleeding in the area. This is a well-known, infrequently occurring complication, which can occur regardless of the technique used for the surgery.... There appears to be no deviation from normal, accepted practice and surgical technique. There is no indication of negligence on the part of Dr. Kubiak.

In June of 1991, Walsh supplied Appellant with a supplemental report from Dr. Romy, wherein Dr. Romy again stated his opinion that Dr. Kubiak had breached the applicable standard of care in treating Walsh. In addition to reiterating

---

2. Walsh was married at the time of his injury and through the commencement of this action. Walsh and his wife subsequently divorced in 1988 for reasons which were unrelated to this proceeding. The original complaint included a claim by Walsh's wife for damages premised upon a loss of consortium; however, this claim was withdrawn at the time of trial, and Walsh's wife did not participate in the proceedings before the trial court and is not a party to this appeal.

his opinion in his original report that the surgery had been negligently performed, Dr. Romy also expressed the opinion that the surgery had been performed without Walsh's informed consent, that the surgery had been ill-advised and unnecessary, and that the neurologic effects of the surgery were permanent. Upon receipt of Dr. Romy's supplemental report, Appellant requested a postponement of the scheduled trial in order to review Dr. Romy's conclusions. Despite the grant of a continuance, Appellant did not proffer any supplemental expert reports.

Trial commenced in September of 1991. At trial, Dr. Romy testified that Dr. Kubiak had been negligent in performing the surgery, that the surgery had been performed without Walsh's informed consent, and that the surgery had been unnecessary. During his testimony, over the objections of defense counsel, Dr. Romy made reference to Dr. Scogna's statements contained in his consultation report concerning the necessity of the surgery. Counsel's objections were overruled, and Dr. Romy was permitted to testify that Dr. Scogna had stated in his report that surgery was not recommended.

At a conference in chambers immediately prior to the commencement of the defense's case, Walsh's counsel requested that the testimony of Appellant's expert, Dr. Murtagh, be limited to the issue of whether Dr. Kubiak's surgical technique and approach were the cause of Walsh's injuries, namely, whether Dr. Kubiak was negligent in the manner in which he had performed the surgery. At that time, Walsh's expert, Dr. Romy, had concluded his testimony, had been excused as a witness, and was no longer present at trial. Defense counsel, who sought to introduce Dr. Murtagh's opinion testimony regarding the necessity of the surgery, objected. The trial court, over defense counsel's objection, ruled that because the pre-trial report submitted by Dr. Murtagh only dealt with the issue of negligence in the performance of the operation, Dr. Murtagh's testimony would be limited to "the four corners" of the report. Accordingly, Dr. Murtagh testified only concerning whether Dr. Kubiak had performed the surgery properly.

At the conclusion of trial, the jury answered special interrogatories. The jury found that Dr. Kubiak had been negligent in performing surgery which was unnecessary and that Dr. Kubiak had operated without obtaining Walsh's informed consent. The jury found, however, that Dr. Kubiak had not been negligent in his operating technique and had performed the surgery correctly. A verdict was rendered in favor of Walsh in the amount of $2,600,000. Appellant filed a motion for judgment notwithstanding the verdict, or, in the alternative, a new trial. The trial court denied the motions and molded the verdict to include delay damages, resulting in a total verdict of $4,054,325.

Appellant appealed to the Superior Court, and a panel affirmed the judgment entered in favor of Walsh. Appellant petitioned for reargument before the Superior Court en banc. The petition was granted, and the matter is now before this court for disposition.

Appellant raises two issues for our review:

1) Whether the trial court erred in prohibiting Appellant's expert from testifying regarding the necessity of the surgery?

2) Whether the trial court erred in permitting Walsh's expert to testify regarding the hearsay opinion of Dr. Scogna?

■ Appellant claims that the trial court erred in its evidentiary rulings concerning the proposed trial testimony of her defense expert and the trial testimony of Walsh's expert, and that such errors warrant the grant of a new trial. When reviewing a trial court's denial of a motion for a new trial, this court is limited to determining whether there was a clear and palpable abuse of discretion or error of law which controlled the outcome of the case. *Butler v. Kiwi, S.A.,* 412 Pa.Super. 591, 595, 604 A.2d 270, 272 (1992), *appeal denied,* 531 Pa. 650, 613 A.2d 556 (1992), citing *Stevenson v. General Motors Corporation,* 513 Pa. 411, 521 A.2d 413 (1987); *Stover v. Association of Thoracic and Cardiovascular Surgeons,* 431 Pa.Super. 11, 635 A.2d 1047 (1993).

 Appellant first contends that the trial court improperly precluded the defense's expert from testifying regarding the necessity of the operation when such testimony was within the fair scope of the expert's report and was therefore admissible under Pa.R.Civ.P. No. 4003.5(c). The admission of expert testimony is a matter within the sound discretion of the trial court, whose rulings thereon will not be disturbed absent a manifest abuse of discretion. *Brogley v. Chambersburg Engineering Company*, 306 Pa.Super. 316, 452 A.2d 743 (1982). Rule 4003.5(c) of the Pennsylvania Rules of Civil Procedure provides that an expert witness may not testify on direct examination concerning matters which are either inconsistent with or go beyond the fair scope of matters testified to in discovery proceedings or included in a separate report. *Greer v. Bryant*, 423 Pa.Super. 608, 621 A.2d 999 (1993). Specifically, the Rule provides:

> To the extent that the facts known or opinions held by an expert have been developed in discovery proceedings under ... this rule, his direct testimony at trial may not be inconsistent with or go beyond the fair scope of his testimony in the discovery proceedings as set forth in his deposition, answer to an interrogatory, separate report, or supplement thereto. However, he shall not be prevented from testifying as to facts or opinions on matters on which he has not been interrogated in the discovery proceedings.

Pa.R.Civ.P. No. 4003.5(c). The Rule's Explanatory Note states that "where the full scope of the expert's testimony is presented in ... the separate report ... this will fix the permissible limits of his testimony at trial." This limitation "serves to insure that an expert's report will be sufficiently comprehensive and detailed to inform an opposing party of the expert's testimony at trial." *Havasy v. Resnick*, 415 Pa.Super. 480, 492, 609 A.2d 1326, 1331 (1992).

Thus, "[e]xperts may testify at trial concerning matters which are within the fair scope of a pretrial report." *Pascale v. Hechinger Company of Pennsylvania*, 426 Pa.Super. 426, 435, 627 A.2d 750, 754 (1993) (citations omitted). "The avoidance of unfair surprise to an adversary concerning the facts

and substance of an expert's proposed testimony is the primary purpose of the rule requiring that testimony be within the fair scope of the pretrial report." *Id.* (citation omitted).

In *Wilkes–Barre Iron & Wire Works, Inc. v. Pargas of Wilkes–Barre, Inc.*, 348 Pa.Super. 285, 502 A.2d 210 (1985), the Superior Court noted that

> it is impossible to formulate a hard and fast rule for determining when a particular expert's testimony exceeds the fair scope of his or her pretrial report. Rather, the determination must be made with reference to the particular facts and circumstances of each case. The controlling principle which must guide is whether the purpose of Rule 4003.5 is being served. The purpose of requiring a party to disclose, at his adversary's request, "the substance of the facts and opinions to which the expert is expected to testify" is to avoid unfair surprise by enabling the adversary to prepare a response to the expert testimony. *See Augustine v. Delgado*, 332 Pa.Super. [194] at 199, 481 A.2d [319] at 321 [ (1984) ] ("Pa.R.Civ.P. 4003.5 favors liberal discovery of expert witnesses and disfavors unfair and prejudicial surprise"); *Martin v. Johns–Manville Corp.*, 322 Pa.Super. [348] at 358, 469 A.2d [655] at 659 [ (1983) ] ("[W]e have found experts' reports to be adequate ... when the report provides sufficient notice of the expert's theory to enable the opposing party to prepare a rebuttal witness.")

> In other words, in deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on the word "fair." The question to be answered is whether, under the particular facts and circumstances of the case, the discrepancy between the expert's pretrial report and his trial testimony is of a nature which would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the appropriate response.

*Id.,* 348 Pa.Super. at 290, 502 A.2d at 212–213.

Thus, in determining whether an expert's trial testimony falls within the fair scope of his pre-trial report, the trial court

must determine whether the report "provides sufficient notice of the expert's theory to enable the opposing party to prepare a rebuttal witness." *Hickman v. Fruehauf Corporation,* 386 Pa.Super. 455, 459, 563 A.2d 155, 157 (1988), *appeal denied,* 528 Pa. 611, 596 A.2d 158 (1991) (citation omitted). The trial court must also inquire "whether there has been surprise or prejudice to the party which is opposing the proffered testimony of the expert, based upon any alleged deviation between the matters disclosed during discovery, and the testimony of such expert at trial." *Trent v. Trotman,* 352 Pa.Super. 490, 502, 508 A.2d 580, 587 (1986). "What constitutes surprise and prejudice, however, depends upon the pre-trial particulars of each case." *Augustine by Augustine v. Delgado,* 332 Pa.Super. 194, 199, 481 A.2d 319, 321 (1984).

Here, the pre-trial report of Appellant's expert stated that his opinion was that "[t]here is no indication of negligence on the part of Dr. Kubiak." The report briefly described the surgical technique employed by Dr. Kubiak and then stated that such technique was an accepted one which represented current surgical practice. Nowhere in the report was there any mention of the medical necessity of the surgery, an issue which Walsh had raised prior to trial, nor did the report state the basis upon which Dr. Murtagh would be prepared to formulate and express an opinion concerning this issue. Because nothing in the report would have lead Walsh to anticipate that Dr. Murtagh had formed or would express the opinion at trial that the surgery was in fact necessary, the report lacked sufficient comprehensiveness and detail to inform Walsh of the defense's expert testimony. Accordingly, the opinion contained in Dr. Murtagh's report was limited to the issue of whether Dr. Kubiak had negligently performed the surgery, and any proposed testimony concerning the necessity of the surgery was outside the scope of such report.

Because a fair reading of Dr. Murtagh's report does not provide sufficient notice concerning any opinion on his part that the surgery was indeed necessary, Walsh would not have been able, based upon the report, to anticipate such testimony

and adequately prepare to cross-examine Dr. Murtagh and rebut his testimony on such point. Furthermore, Walsh's expert, Dr. Romy, the only expert witness who could have rebutted Dr. Murtagh's proposed testimony, had already testified and had been dismissed as a witness at the time of Dr. Murtagh's testimony. Therefore, Walsh had no expert witness available to listen to and observe the testimony of the defense's expert in order to assist Walsh's counsel in challenging Dr. Murtagh's opinion on cross-examination and in preparing a proper rebuttal. Accordingly, Walsh would have been prejudiced by the introduction of Dr. Murtagh's testimony, and the trial court properly limited the scope of Dr. Murtagh's testimony to the issue of whether the surgery was negligently performed, as discussed in the expert report.

Appellant's second contention is that the trial court erred in permitting Walsh's expert, Dr. Romy, to testify regarding the out-of-court statements of the consulting physician, Dr. Scogna, that the surgery was unnecessary. Appellant contends that the opinion of Dr. Scogna was inadmissible hearsay, and that the admission of such testimony resulted in reversible error, warranting a new trial.

Dr. Scogna's opinion was contained in his consultation report which was part of Walsh's hospital records. Although hospital records are admissible under the business records exception to the hearsay rule to show the fact of hospitalization, treatment prescribed, and symptoms found, *Williams v. McClain,* 513 Pa. 300, 520 A.2d 1374 (1987), medical opinion contained in such records is not admissible where the doctor who offered the opinion is not available for cross examination. *Id.; see also, Commonwealth v. DiGiacomo,* 463 Pa. 449, 345 A.2d 605 (1975); *Jones Appeal,* 449 Pa. 543, 297 A.2d 117 (1972). Because Dr. Scogna's consultation report contained an expression of his examination findings, his recommendation that Walsh should be observed and treated on an outpatient basis, and his impression that surgery was unnecessary, his statements contained in the report constituted an opinion, and

as such, were inadmissible hearsay to which Dr. Romy should not have been permitted to testify.

Although Appellant is correct in asserting that the trial court erred in admitting the hearsay statements of Dr. Scogna through the testimony of Dr. Romy, not all trial errors rise to the level of reversible error. *Williams v. McClain*, 513 Pa. 300, 520 A.2d 1374 (1987). "An erroneous ruling must also be harmful to the complaining party before reversal is required." *Id.*, 513 Pa. at 308, 520 A.2d at 1378, citing *Anderson v. Hughes*, 417 Pa. 87, 208 A.2d 789 (1965).

In the instant case, Dr. Romy's hearsay testimony concerning Dr. Scogna's opinion pertained solely to the issue of whether the surgery was necessary and merely buttressed Dr. Romy's expert opinion on that point. The jury, however, separately determined that Walsh was entitled to recover based upon the lack of informed consent, and there is ample evidence on the record to support the jury's finding in that regard.

The testimony of Walsh and his expert at trial established that Walsh was not advised by Dr. Kubiak of the nature and risks of the operation, nor was Walsh advised of any non-surgical alternatives. Rather, Dr. Kubiak merely informed him that the "exploratory surgery" would be a "piece of cake." The nurses' notes included in Walsh's hospital records indicate that Dr. Kubiak had not discussed the kind of surgery with Walsh prior to performing the operation. Furthermore, the hospital records indicate that a consent form had still not been obtained as of 12:30 a.m. on the morning of the operation, and the only evidence presented regarding Walsh's alleged consent was a consent form which appeared to have been signed between 7:00 a.m. and the time of surgery, after Walsh had already received a preoperative tranquilizer. Additionally, Dr. Murtagh's expert report indicated that the neurological impairment experienced by Walsh was "a well-known, infrequently occurring complication, which can occur regardless of the technique used for the surgery." The record does not indicate that Dr. Kubiak ever advised Walsh of the possibility of such a well-known complication.

296

Thus, there was more than sufficient evidence by which the jury could have reasonably concluded that Walsh had not been informed of material facts, risks, complications, and alternatives to surgery which a reasonable person would have considered significant in deciding whether to have the operation, *see, Stover v. Association of Thoracic and Cardiovascular Surgeons,* 431 Pa.Super. 11, 635 A.2d 1047 (1993), and the outcome of the trial would not have differed had the challenged testimony been excluded.

Accordingly, Appellant is not entitled to a new trial and the judgment entered on the jury verdict is affirmed.

Judgment affirmed.