**Darby v. Gilkey**

C.P. of Monroe County, no. 4947 Civil 1991.

*Allan H. Gordon,* for plaintiff.
*Richard Seneca,* for defendant.

MILLER, *J.,* July 3, 1996—Plaintiff, Marian Darby, first saw defendant, Doctor Edward Gilkey, in 1987. She saw him again several times in 1990 on the advice of her rheumatologist who wanted her to seek out a family doctor for her arthritis. In March of 1991, plaintiff lost partial vision and consulted with neurologists Dr. Vegari and Dr. Kerrigan to further evaluate her condition. Approximately one month later, on April 18, 1991, she was admitted to Pocono Medical Center with an acute lateral wall myocardial infarction. On April 21, 1991, between 2:30 a.m. and 3 a.m., while in the Coronary Care Unit, Mrs. Darby received three doses of morphine from her nurse after complaining of a

headache. When the medication failed to relieve the headache, Nurse McMaster called Dr. Gilkey at home at 3 a.m. Nurse McMaster told Dr. Gilkey that Mrs. Darby was nauseous and had vomited, although her vital signs were normal and no neurological problems were noted. Nurse McMaster also reported that the plaintiff had said to her, "This is a migraine just like I have had in the past." Over the telephone, Dr. Gilkey ordered Demerol and Phenergan. Plaintiff's headache subsided after these were administered. Shortly after 6 a.m., Dr. Gilkey arrived at the hospital, examined Mrs. Darby and found her to be conscious but lethargic.

At about 9:05 a.m., Mrs. Darby could not be aroused. Dr. Gilkey was called to CCU from another part of the hospital and noted after an examination a decerebrate posturing and documented that her pupils appeared fixed, dilated and equal. He ordered a CT scan, which was performed at 10:10 a.m. While having the CT scan, Mrs. Darby suffered respiratory arrest, requiring intubation and mechanical ventilation. The CT scan revealed a large subdural hematoma which required surgery. The sole neurosurgeon PMC had on staff was out of town, and arrangements were made by Dr. Vegari for Mrs. Darby to be transferred from PMC to Thomas Jefferson University Hospital in Philadelphia by Medevac helicopter. The Jefferson crew attempted to land near the hospital, but heavy winds and rain made it impossible and plaintiff did not leave PMC until 2:30 p.m. After arriving at Jefferson, Mrs. Darby underwent a craniotomy for evacuation of the subdural hematoma sometime after 4 p.m. She remained in a vegetative state for approximately six weeks at Jefferson and was later transferred to a head injury recovery center

where she remained for approximately six months. Mrs. Darby now suffers from a right hemiparesis.

Plaintiffs filed a complaint on December 23, 1991 naming Dr. Gilkey, Dr. Vegari and PMC as defendants and alleging that they did not act within the appropriate standards of medical care and that the failure to do so caused the plaintiff's injuries. By agreement, Dr. Vegari was dismissed by plaintiffs after the exchange of expert reports and PMC was dismissed after the beginning of the trial. As the trial proceeded against Dr. Gilkey alone, plaintiffs' theory of the case was that he was negligent in failing to order a CT scan at 3 a.m. when he was initially advised of the headache. The defense responded that Mrs. Darby's signs and symptoms were consistent with a migraine headache and based on the information given to Dr. Gilkey at 3 a.m. were not consistent with a subdural hematoma and that the plaintiff responded to the treatment for migraine headache which would not have provided relief had she been suffering from a subdural hematoma at that time.

After a four-day trial in February of 1996, the jury returned a verdict in favor of the defendant. Plaintiffs filed a motion for a new trial, and both parties filed briefs in support of their respective positions. We heard oral argument on May 6, 1996.

It is a long-standing principle that the decision of whether to order a new trial is one that lies within the discretion of the trial court and will not be overturned on review unless the court committed a clear abuse of discretion or error of law. *Chiaverini v. Sewickley Valley Hospital*, 409 Pa. Super. 630, 598 A.2d 1021 (1991).

Plaintiffs contend that this court erred in precluding plaintiffs' expert, Dr. Charles Anderson, from testifying as to the standard of care required by a family practitioner. After Dr. Anderson testified as to his qualifications as a neurosurgeon, the defense requested an offer of proof. The plaintiffs' family practice expert, Dr. Joel Feigin, had previously testified as to the standard of care owed by a family practice physician, and the defense expressed concerns that Dr. Anderson would testify from a neurosurgical perspective about the standard of care owed by a family practice physician. The record is replete with promises made by plaintiffs' counsel during an in-camera conference that Dr. Anderson would not be questioned as to the standard of care. After a lunch break, plaintiffs' counsel told the court that he had changed his mind and Dr. Anderson would testify as to the standard of care required of the defendant. Later, plaintiffs' counsel again changed his position and advised the court that he would not question Dr. Anderson on the standard of care but only was going to ask him to explain a statement that was in his report.

Dr. Anderson was qualified without objection as an expert in the field of neurosurgery. He was not board certified in family medicine, and plaintiffs' counsel never inquired as to whether neurosurgery overlaps family medicine or whether Dr. Anderson had experience in family medicine. Under the standard articulated by our Superior Court in *Lira v. Albert Einstein Medical Center,* 384 Pa. Super. 503, 559 A.2d 550 (1989), he was not qualified to testify in the area of family medicine. Therefore, his testimony as to the standard of care owed by a family practitioner was properly precluded.

Plaintiffs further contend that this court erred in precluding Dr. Anderson from testifying that a CT scan would have revealed the subdural hematoma if taken at 3 a.m. Dr. Anderson submitted three pretrial reports. The reports focus primarily on the issues of the delay in the transfer of Mrs. Darby to a Philadelphia hospital and were prepared in anticipation of the plaintiffs' suit against PMC. The first report states, "Approximately seven hours elapsed from the time of the onset of her severe headache and the performance of a CT scan. This delay was too long." Plaintiffs admit that although the report does not offer an opinion as to the time the CT scan should have been taken, they argue that the report states "by implication and by inference" that it should have been taken at 3 a.m.

Rule 4003.5(c) of the Pennsylvania Rules of Civil Procedure provides that an expert witness may not be called to testify to matters which are inconsistent with or go beyond the fair scope of matters testified to in discovery or in the pretrial report. *Walsh v. Kubiak,* 443 Pa. Super. 284, 661 A.2d 416 (1995), *alloc. denied,* 543 Pa. 716, 672 A.2d 309 (1996). The proper inquiry of whether an expert's trial testimony falls within the fair scope of his pretrial report is whether there has been "sufficient notice of the expert's theory to enable the opposing party to prepare a rebuttal witness." *Id.* at 293, 661 A.2d at 420. We cannot agree with plaintiffs that Dr. Anderson's report gave the defendant notice that he would testify as proffered, and we properly precluded his testimony as being outside the scope of his report.

Plaintiffs also allege that this court erred in precluding Dr. Anderson from testifying as to causation. This issue was not addressed in plaintiffs' brief nor was it addressed

at oral argument, and therefore we consider it waived. In any event, the jury did not reach the issue of causation in that they found no negligence on the part of defendant.

Finally, plaintiffs argue that defendant's testimony violated a stipulation entered into when defendant's deposition was taken. Nothing regarding this alleged stipulation was ever placed on the record before the court nor were we provided with a copy of the stipulation. Plaintiffs now argue that defendant's former counsel agreed on the deposition record that the defendant would not be offered as an expert witness at trial and that this agreement was violated when the defendant was permitted to testify that the intracranial hemorrhage occurred between 7 a.m. and 9:05 a.m.

The trial court has broad powers concerning the conduct of a trial, particularly with regard to the admission or exclusion of evidence. *Micciche v. Eastern Elevator Co.,* 435 Pa. Super. 219, 645 A.2d 278 (1994). We find that defendant's testimony brought out on redirect was nothing more than information elicited based on questions asked by plaintiffs' counsel on cross-examination and was appropriate.

In an appeal from a jury trial, where the moving party alleges reversible error, he must show not only the existence of the error but also that the jury was misled by this error to their detriment. *Mapp v. Dube,* 330 Pa. Super. 284, 479 A.2d 553 (1984). We cannot find a substantial reason given by the plaintiffs why a new trial should be granted in this negligence case and therefore enter the following order.

## ORDER

And now, July 3, 1996, plaintiffs' motion for post-trial relief is denied.