# Fields v. Samhouri

*Eric G. Zajac,* for plaintiff.
*Bart C. Tuttle* and *Maura K. Nolan,* for defendant.

BERNSTEIN, *J.,* February 4, 1999—Plaintiff Gloria Fields filed this medical malpractice action against defendant Farouq A. Samhouri M.D. on April 3, 1995, alleging that defendant was negligent in plaintiff's medical care. On February 7, 1996, defendant filed a motion for summary judgment because plaintiff had not produced any expert report critical of defendant before the court-ordered deadline for the production of such reports, December 2, 1996. Plaintiff responded by asserting that they timely produced the expert reports of Murray K. Dalinka M.D., and Richard G. Schmidt M.D., which criticized defendant Samhouri by implication through the claim that plaintiff's mass was im-

properly imaged.[1] The court denied defendant's motion on March 12, 1997. On April 21, 1997, plaintiff produced an additional expert report of Ernest Austin M.D. Dr. Austin explicitly concluded that defendant deviated from the standard of care by failing to properly interpret clinical findings and failing to obtain clinical correlation of radiographic findings. Defendant subsequently filed a motion to preclude the untimely expert opinion of Ernest Austin M.D., which was denied.

Trial began on August 18, 1997. On August 22, 1997, a jury returned a verdict for plaintiff and against defendant in the amount of $150,000. Defendant timely filed a motion for post-trial relief. On September 15, 1997, the court entered an order granting delay damages to plaintiff in the amount of $19,038.78, molding the verdict to $169,038.78. Post-trial motions were argued on July 2, 1998. Because Dr. Austin testified in court beyond any fair scope of his pretrial expert report, the court granted defendant's motion for post-trial relief and ordered a new trial on October 16, 1998. From this order, plaintiff timely appealed.

Plaintiff claims on appeal that this court erred in granting defendant's motion. Plaintiff claims that Dr. Austin's testimony was within the fair scope of his report. For the following reasons, the court's ruling was proper and should be affirmed.

The following facts are undisputed. In February 1993, plaintiff noticed a small lump on her lower left ankle and reported it to her treating physician, Dr. John Eshleman.[2] Following an inconclusive MRI in September

---

1. Neither Dr. Weingarten nor Dr. Schmidt testified for plaintiff at trial.

2. N.T., 8/19/97, at 253.

1993, Dr. Eshleman referred plaintiff to defendant Samhouri, a vascular surgeon. Defendant conducted an arterial Doppler test on plaintiff's leg, which revealed a blockage in her arteries and poor blood circulation. In November 1993, a second MRI showed that the mass in her leg was enlarging.[3] While plaintiff was treating with Dr. Maro, who was not named as a defendant in this lawsuit, a biopsy revealed cancer in plaintiff's left leg.[4] In July 1994, plaintiff's lower left leg was amputated.[5]

After the court denied defendant's motion for summary judgment based upon the reports of Drs. Dalinka and Schmidt and well after the expert report deadline had passed, plaintiff submitted the expert report of Dr. Ernest Austin. In his report, Dr. Austin concluded that defendant deviated from the standard of care in his treatment of plaintiff. His report identified the deviation as follows:

"It is my opinion, given to a reasonable degree of medical certainty, that Dr. Samhouris's [sic] failure properly to interpret and pursue clinical findings and his failure to obtain clinical correlation of radiographic findings on Mrs. Fields's [sic] tumor directly led to the failure to diagnose and treat this tumor in October and/or November of 1993 and increased the risk of harm to Mrs. Fields."[6]

No other deviation was identified in the report. Immediately prior to trial, defendant made an oral motion to preclude the testimony of Dr. Austin, which the court denied.[7]

---

3. N.T., 8/19/97, at 269.
4. N.T., 8/18/97, at 54.
5. N.T., 8/18/97, at 56.
6. Affidavit of Dr. Ernest Austin M.D., April 21, 1997.
7. N.T., 8/18/97, at 13.

At trial, Dr. Austin testified that defendant deviated from the standard of care, presenting entirely new theories that were neither mentioned nor hinted at in his pretrial report. Defense counsel repeatedly objected to this testimony on the grounds that Dr. Austin's testimony was beyond the fair scope of his pretrial report. Defendant's objections were overruled. Dr. Austin stated at trial that defendant was negligent in failing to give a definitive diagnosis when tests showed enlargement of the lesion.[8] Dr. Austin then testified over objection, entirely beyond his report, that defendant's failure to perform a biopsy was below the standard of care:

"Mr. Troiani: Doctor, can you tell the jury why this is specifically below the standard of care?

"The Witness: Well, any time there's a swelling or a mass that cannot be defined, it's accepted medical practice to biopsy this lesion . . .

"Mr. Tuttle: Objection, your honor. Move to strike.

"The Court: Overruled. Continue.

"The Witness: to find out exactly what the problem is.

"Mr. Troiani: And did Dr. Samhouri, from the review of your documents concerning Mrs. Fields, do a biopsy?

"The Witness: No.

"Mr. Troiani: And was that failure to do a biopsy below the standard of care, in your opinion, doctor?

"Mr.Tuttle: Objection, your honor.

"The Court: Overruled.

"The Witness: Yes.[9] . . .

---

8. N.T., 8/19/97, at 152-53.
9. N.T., 8/19/97, at 153-54.

"Mr. Troiani: Doctor, did the vascular problems of Mrs. Fields pose any problem, in your opinion, with respect to doing a biopsy?

"Mr. Tuttle: Objection, your honor. Beyond the scope.

"The Court: Overruled.

"The Witness: Realizing that there was evidence, by various studies, that the patient had vascular problems, particular care should have been taken in obtaining a specimen to determine what the pathology is in that leg." [10]

Finally, Dr. Austin testified: "There's no indication, in any of the records that I reviewed, that prohibited an attempt at salvaging her leg." [11]

None of these assertions were mentioned or in any way implied in Dr. Austin's pretrial report. As a result, defendant could not possibly have anticipated that Dr. Austin had formed or would express the opinion that the failure to order a biopsy was any basis for liability. Defendant had no expert witness available in court to rebut this new theory.[12] In fact, defendant's previously retained expert, Dr. Michael Weingarten M.D., had given a trial deposition the day before trial commenced. Consequently, Dr. Weingarten had no opportunity to challenge the new conclusions that Dr. Austin introduced into the case for the first time from the witness stand.

---

10. N.T., 8/19/97, at 155.

11. N.T., 8/19/97, at 157. The actual claims presented in Dr. Austin's report were *not* presented at trial.

12. Defendant presented the testimony of its expert, Dr. Michael Weingarten M.D., via videotape. Dr. Weingarten's deposition was taken prior to Dr. Austin's testimony at trial. Dr. Weingarten concluded that defendant's treatment of plaintiff was within the accepted standard of care.

It is long and well established that an expert may not testify beyond the fair scope of his pretrial report. Pennsylvania Rule of Civil Procedure 4003.5(c), adopted in 1978, provides that an expert's "direct testimony at the trial may not be inconsistent with or go beyond the fair scope of his testimony in the discovery proceedings as set forth in his deposition, answer to an interrogatory, separate report, or supplement thereto." [13] The purpose of this requirement is "to insure that [the] expert's report will be sufficiently comprehensive and detailed to inform an opposing party of the expert's testimony at trial." [14] The report establishes the appropriate subject matter boundaries within which an expert may testify.[15] More importantly, Rule 4003.5 serves to avoid unfair surprise and prevent "trial by ambush."

The Superior Court set forth the proper standard for a trial court in *Wilkes-Barre Iron & Wire Works Inc. v. Pargas of Wilkes-Barre Inc.*[16] To determine whether an expert's testimony is within the fair scope of his pretrial report, the court must decide: "whether, under the particular facts and circumstances of the case, the discrepancy between the expert's pretrial report and his trial testimony is of a nature which would prevent the adversary from preparing a meaningful response, or which would mislead the adversary as to the nature of the appropriate response." [17]

13. Pa.R.C.P. 4003.5(c).

14. *Havasy v. Resnick,* 415 Pa. Super. 480, 492, 609 A.2d 1326, 1331 (1992), *appeal dismissed,* 537 Pa. 114, 641 A.2d 580 (1994).

15. *Walsh v. Kubiak,* 443 Pa. Super. 284, 291, 661 A.2d 416, 420 (1995), *allocatur denied,* 543 Pa. 716, 672 A.2d 309 (1996).

16. 348 Pa. Super. 285, 502 A.2d 210 (1985).

17. *Id.,* 348 Pa. Super. at 290, 502 A.2d at 213.

The court should also consider "whether there has been surprise or prejudice to the party which is opposing the proffered testimony of the expert . . . ."[18] The facts of this case are the clearest example of the evils Rule 4003.5 intends to prohibit. Dr. Austin introduced new theories of negligence at trial after misleading the defense into preparing and videotaping its expert on entirely different theories.

Dr. Austin's report identified precise reasons for his opinion that defendant's care and treatment of plaintiff was below the standard of care—namely, defendant's "failure properly to interpret and pursue clinical findings" and "his failure to obtain clinical correlation of radiographic findings on Mrs. Fields's [sic] tumor."[19] During direct examination, however, Dr. Austin testified in detail concerning deviations that were totally absent from his report. Dr. Austin's report does not mention anything about the performance of a biopsy, the growth of the lesion, the effect of plaintiff's vascular condition, or whether plaintiff's leg could have been salvaged.

Two recent Superior Court decisions addressing, this issue have approved the preclusion of expert testimony. In *Walsh v. Kubiak,*[20] the defendant sought to introduce expert testimony concerning the medical necessity of surgery. The pretrial report, however, merely described the defendant's surgical technique and stated that he did not perform the surgery negligently. The report did

18. *Walsh,* 443 Pa. Super. at 293, 661 A.2d at 420. See also, *Pascale v. Hechinger Company of Pa.,* 426 Pa. Super. 426, 435, 627 A.2d 750, 754 (1993) (noting avoidance of unfair surprise concerning facts and substance of expert's proposed testimony is primary purpose of rule requiring that testimony be within fair scope of report).

19. Affidavit of Dr. Ernest Austin M.D., April 21, 1997.

20. 443 Pa. Super. 284, 661 A.2d 416 (1995), *allocatur denied,* 543 Pa. 716, 672 A.2d 309 (1996).

not question the medical necessity of the surgery. Because the opinions contained in the report discussed only the negligent performance of the surgery, the trial court precluded testimony concerning medical necessity. Affirming the trial court's ruling that the expert's proposed testimony concerning the necessity of surgery was beyond the scope of his report, the Superior Court stated:

"Because nothing in the report would have lead [sic] Walsh to anticipate that Dr. Murtagh had formed or would express the opinion at trial that the surgery was in fact necessary, the report lacked sufficient comprehensiveness and detail to inform Walsh of the defense's expert testimony." [21]

The Superior Court further held that the expert's proposed testimony was prejudicial because the opposing party "would not have been able, based upon the report, to anticipate such testimony and adequately prepare to cross-examine" the expert.[22] The opposing party: "had no expert witness available to listen to and observe the testimony of the defense's expert in order to assist Walsh's counsel in challenging Dr. Murtagh's opinion on cross-examination and in preparing a proper rebuttal." [23]

Similarly, in *Jones v. Constantino*,[24] the expert's two pretrial reports contained "only conclusory statements and general, unsupported opinions in describing why the accident occurred without negligence." At trial, however, the expert "provided an in-depth theory of how the accident occurred without negligence." The Superior

---

21. *Id.* at 293, 661 A.2d at 421.

22. *Id.* at 293-94, 661 A.2d at 421.

23. *Id.* at 294, 661 A.2d at 421.

24. 429 Pa. Super. 73, 84-86, 631 A.2d 1289, 1295-96 (1993), *allocatur denied,* 538 Pa. 671, 649 A.2d 673 (1994).

Court recognized that an expert may not "make a bald assertion of non-negligence in his expert report· and then proffer an in-depth theory explaining absence of culpability at trial . . . ." In holding that the expert's testimony was beyond the fair scope of his pretrial report, the Superior Court stated:

"We do not think that a pretrial separate report of an expert is in comport with Rule 4003.5 where it fails to apprise the opposing party of the basis for the expert's ultimate conclusion." [25]

In this case, Dr. Austin's report contained broad, conclusory statements and failed to state any real basis for his ultimate conclusion that defendant deviated from the standard of care. Likewise, his report failed to state what defendant should have done to comply with the standard of care. Dr. Austin's testimony was obviously prejudicial to defendant's case. Of course defendant was unprepared to challenge Dr. Austin's new theories of negligence on cross-examination. Of course the defense had no ability to present any rebuttal witness. Because defendant's expert, Dr. Weingarten, testified via videotape deposition before Dr. Austin took the witness stand, he also had no opportunity to rebut Dr. Austin's new theory. Dr. Austin's attempt to completely change the basis of his expert opinion at trial was a clear violation of Rule 4003.5.

For the foregoing reasons, Dr. Austin's testimony concerning defendant's deviation from the standard of care was well beyond any fair scope of his pretrial report and prejudicial to defendant. Accordingly, the court properly granted defendant's motion for post-trial relief and ordered a new trial.

---

25. *Id.* at 86, 631 A.2d at 1296.