## Franks v. Brownstein

*Nancy G. Rhoads,* for plaintiff.
*Francis J. McGovern,* for defendant.

GORDON, *J.,* October 20, 1999—This is an action for medical malpractice for the alleged failure to diagnose the plaintiff's kidney disease. This suit was brought by the plaintiff, Kenneth Franks Jr., seeking damages from the defendant, his doctor, Bernard Brownstein M.D. After a trial before this court and a jury, the jury returned a verdict in favor of the defendant. The plaintiff filed timely post-trial motions requesting a new trial. The post-trial motions were subsequently denied.

Factually, Franks had been a patient of Brownstein since March 1979 when he was 5 years old. Brownstein was the primary care physician in Franks' HMO. In March 1990, Franks went to see Brownstein because he was experiencing hair loss. After a series of approximately 40 tests all returned normal, Brownstein diagnosed Franks with early male pattern baldness. In August 1990, Franks went to Brownstein because of genital herpes and secondary bacterial infection. He was prescribed medication for this condition. Approximately six months later Franks went to Brownstein because he had been experiencing a penile discharge and difficulty urinating for approximately one month. He was diagnosed with non-specific urethritis as a result of the herpes and prescribed antibiotics. In May 1991, Franks again went to Brownstein, this time complaining of itchy eyes, nasal discharge, sneezing and running nose. He was diagnosed with an allergy and given a prescription medication for the head symptoms. He also complained again of dysuria for which Brownstein prescribed a different antibiotic. Four months later, in September 1991, Franks went to see Brownstein to get a tuberculosis test that was needed for work. He was scheduled to return in three days for results of that test, but did not keep that appointment. Franks returned on October 9, 1991, again because of genital redness. Brownstein diagnosed a fungal infection and prescribed antifungal medication. In November 1991, Franks returned with complaints of head congestion, swollen face, dry and sore throat. He was prescribed allergy medication and Brownstein recommended a humidifier for the dry air in his home. When Franks returned three months later in February 1992 complaining of the same symptoms, Brownstein questioned him about the medication and

humidifier and Franks informed him that neither had been purchased or used. Brownstein made the same diagnosis and again recommended that Franks take the antihistamine and get a humidifier for the dry air in his home.

On November 10, 1992, Franks was admitted to the emergency room at Germantown Hospital and a biopsy of the kidney revealed end-stage renal disease, requiring dialysis and a kidney transplant.

Franks avers that Brownstein breached his duty of care in failing to diagnose his kidney disease as early as February 1991 and had such diagnosis taken place, effective early treatment would have reduced the need for a transplant. After the jury's verdict, Franks appealed alleging that this court abused its discretion with the following two rulings:

"(a) Precluding plaintiff's expert nephrologist from testifying because the expert report was presented beyond the trial management deadline; and

"(b) Precluding plaintiff from offering impeachment evidence from a medical text during cross-examination of defendant's expert."

## STANDARD OF REVIEW

The standard for reviewing a trial court's determination that a new trial should not be granted is whether the trial court clearly and palpably abused its discretion or committed an error of law that impacted the jury's verdict. *Walsh v. Kubiak,* 443 Pa. Super. 284, 661 A.2d 416 (1995); *Melso v. Sun Pipe Line Co.,* 394 Pa. Super. 578, 576 A.2d 999 (1990), *appeal denied,* 527 Pa. 667, 593 A.2d 842 (1991).

An abuse of discretion requires more than a mere error in judgment. The trial court's ruling must be either

manifestly unreasonable, or based on prejudice, bias, ill will or partiality. *Simmons v. Simmons,* 723 A.2d 221, 222-23 (Pa. Super. 1998) (citing *Spitzer v. Tucker,* 404 Pa. Super. 539, 591 A.2d 723 (1991), *appeal denied,* 530 Pa. 645, 607 A.2d 255 (1992)).

## I. *Expert Not Allowed To Testify Because Report Offered Beyond Deadline*

In order to determine if preclusion of the plaintiff's expert is grounds for a new trial under the standard of review cited above, we must answer three questions and in the following order:

"(1) Would allowing the plaintiff's expert to testify have been incurably prejudicial to the defendant?

"(2) If not incurably prejudicial, was precluding the expert an abuse of discretion by this court?

"(3) If an abuse of discretion did occur, was the error harmful?"

*First,* as historical background, Philadelphia County and the First Judicial District of Pennsylvania is one of the busiest court districts in the nation. In 1992 there were 43,752 pending civil cases. As a result, new reduction strategy procedures were designed for the efficient disposition of the pending civil docket. Part of the procedure included a case management order. The case management order starts out with a stern note to the attorneys that failure to comply with requirements may have a serious adverse effect on the case. Further, requests for continuances of deadlines set out in a trial management order are carefully scrutinized and usually granted only upon a showing of extreme impact on the case or otherwise unavoidable and extenuating circumstances. See also, Pa.R.C.P. 4003.5(b).

The trial management order in the present case, issued by the Honorable William J. Manfredi, was filed April 17, 1997 and required the plaintiff to submit all expert reports no later than July 31, 1997.[1] The plaintiff appeals this court's denial of testimony of an expert whose report was not presented until September 27, 1997, one month before trial was scheduled to begin. The plaintiff offered no credible extenuating circumstances why the report was submitted two months after the deadline. The defendant's objection based on prejudice from delay was sustained.

Although plaintiff's analysis of the case law regarding last minute expert testimony is applicable in some instances, this case is not one of those moments. The use of a trial management order is not simply to provide a framework for the convenience of the parties and their attorneys, but also to achieve an efficient administration of justice in an overburdened judicial system. The plaintiff had a burden to meet in showing this court that something other than a lack of diligence was why a second expert was not identified between April 17 and July 31, 1997. No tenable offer of necessity was provided. In fact, when asked, plaintiff's counsel answered that testimony of the plaintiff's expert nephrologist was important in order to rebut the testimony of the defendant's expert nephrologist. However, upon motion by the plaintiff, the defendant's expert nephrologist report was also denied because it was outside the time frame of the trial management order. Further, there was nothing in the plaintiff's

---

1. The defendant was ordered to submit all expert reports by August 31, 1997. The one expert who was allowed to testify for the defendant submitted a report on August 21, 1997, in advance of the defense deadline.

expert report that rebutted the causation factors of the defendant's expert report.

*Second,* assuming, arguendo, that any prejudice was curable, the next question is whether the decision of the trial court to preclude the report and testimony was an abuse of discretion. The Superior Court has stated that the rule "specifically provides that the presiding court must balance the facts and circumstances of each case to determine the prejudice to each party." *McDaniel v. Merck, Sharp & Dohme,* 367 Pa. Super. 600, 615, 533 A.2d 436, 444 (1987) (quoting *Feingold v. SEPTA,* 512 Pa. 567, 573, 517 A.2d 1270, 1273 (1986)). Furthermore, the court should consider factors such as surprise, ability to cure, disruption of the efficient flow of the trial and bad faith. There is no absolute red line rule as to when or what sanctions should be imposed for failure to complete discovery of expert reports and witnesses under Rule 4003.5. *Id.* It becomes a question of discretion for the trial judge.

This court ruled that the expert reports received after the case management deadline of both plaintiff *and* defendant were excluded. The decision of this court survives both the balancing test outlined above and the standard of review for abuse of discretion in that there was no misapplication of the law nor any bias or partiality.

*Third,* the last question is necessary only if this court had determined that an abuse of discretion occurred. Whether there was harmful error must dictate the granting of a new trial, despite any abuse of discretion.

The plaintiff's expert nephrologist begins his report by stating that the report addresses the following areas in response to the plaintiff's specific request:

"(1) What procedures and treatment was [sic] necessitated by the renal failure[?]

"(2) What treatment and monitoring will be necessary in the future as a result of Ken's condition[?]

"(3) What is the projected cost of these[?]

"(4) What limitations and complications can be expected[?]

"(5) Can Ken suffer any pain with his future condition[?]

"(6) How is Ken's life expectancy is [sic] affected[?]"

Each of the questions addressed above by plaintiff's expert goes to the issue of damages. Such testimony, no matter how riveting and credible, did not impact the jury's verdict as the issue of damages was not considered. Upon the first question on the jury sheet, the jury answered no as to whether Brownstein was negligent.

Question number 3 which asked the jury to assess damages was not reached and, therefore, had this court abused its discretion in precluding the expert from testifying, such abuse was harmless error.

## II. *Cross-Examination of Expert Using Medical Text*

The plaintiff avers that the trial court committed error when it would not let the defendant's expert be impeached using an authoritative text that was in contradiction to the expert's testimony. However, the defendant's expert stated that he did not consider the treatise an authority in the field. Under such circumstances, proper authenticating grounds must be laid prior to impeaching an expert with a medical text. *McDaniel v. Merck, Sharp & Dohme,* 367 Pa. Super. 600, 533 A.2d 436 (1987).

During trial, the plaintiff's attorney cross-examined the defendant's medical expert, Dr. Gilbert Grossman, on the duty of care. In attempting to set a foundation for

impeachment of his testimony, plaintiff's counsel asked a series of questions regarding the authoritativeness of a particular text.[2] The expert would not agree that the text was an authority in the medical community but stated that it was an accepted text in the field. In fact, Dr. Grossman testified that not only did he not consider the text an authority, but that he had not personally used it as a reference tool for years. N.T. 10/29/97 p. 42.

Although an expert's opinion can be tested or impeached with authoritative works, proper foundation must be presented to show that, in fact, the expert considers the text authoritative. In the case of *Wheeling-Pittsburgh Steel Corporation v. Commonwealth of Pennsylvania,* 51 Pa. Commw. 393, 414 A.2d 776 (1980), an expert witness on air quality was cross-examined regarding a particular article from the American Bar Association's Natural Resource Section. When the expert testified that he did not consider the article authoritative, the court indicated that counsel could not use the article for impeachment purposes. The Commonwealth Court agreed stating "An expert witness may be cross-examined on a work that he or she relied on in forming an opinion and on any work the witness recognizes as authoritative in the field." *Id.* at 395, 414 A.2d at 777 (citing *Brannon v. Lankenau Hospital,* 254 Pa. Super. 352, 385 A.2d 1376 (1978)).

The court went on to state that where neither of the above tests are met, then reference to, or use of, the material during cross-examination is improper unless there is some other evidence that the work is authoritative. *Id.*

---

2. Harrison's Text on the Principles of Internal Medicine.

In *McDaniel, supra* at 621-22, 533 A.2d at 447, the Superior Court stated:

"It is also proper to show that an expert is unfamiliar with the literature in a particular field. . . . Alternatively, as long as appellant has produced her own expert to verify that the particular publications are authoritative in the field, an expert witness may be tested by reference to those publications." (citing *Evanuik v. University of Pittsburgh Western Psychiatric Institute and Clinic,* 234 Pa. Super. 287, 338 A.2d 636 (1975)).

The purpose of impeachment in the present case was to affect the credibility of the witness and to show that the expert's conclusions were contrary to the prevailing medical view. However, the plaintiff had other means available for which to authenticate the treatise as an authority and chose not to do so. We believe we gave plaintiff's counsel ample opportunity to have Dr. Grossman authenticate the text. Counsel's attempt to have him concede the book was an accepted authority in the field met with repeated unsuccess. After the third attempt, this court sustained the defendant's objection and terminated the questioning in this area.

It is within the trial court's discretion to determine the point at which further cross-examination would be unproductive. *Downey v. Weston,* 451 Pa. 259, 301 A.2d 635 (1973). After the expert thrice denounced the text as authoritative, this court determined it was time for plaintiff to move along, and so ruled.

Based on the foregoing, the plaintiff did not meet the burden of showing an abuse of discretion or misapplication of the law and therefore his request for a new trial was denied.