## Keperling v. Rothacker

*Timothy J. Huber,* for plaintiff.
*Linda Porr Sweeney,* for defendants.

FARINA, *J.,* April 10, 2003—On December 20, 1999, plaintiff commenced suit against Drs. Gerald W. Rothacker and Daniel W. Diehl and Orthopedic Associates of Lancaster Ltd (Orthopedic Associates) alleging medical negligence in failing to diagnose Kim S. Keperling's Hodgkin's Disease. Trial in the matter began on November 18, 2002, and the jury reached a verdict on November 26, 2002. The jury found that Dr. Rothacker and Orthopedic Associates were negligent in Mrs. Keperling's treatment, but found that their negligence was not a substantial factor in causing her harm and eventual death. The jury found that Dr. Diehl was not negligent in his care of Mrs. Keperling and he is no longer a party to this action.

In April of 1991, Mrs. Keperling visited her family physician, Dr. Diehl, complaining of pain in her right hip. In February of 1992, she returned and reported

continuing pain. Dr. Diehl ordered several tests and eventually referred Mrs. Keperling to Dr. Rothacker for an evaluation after the radiologist who reviewed her x-rays expressed concern that the sclerotic bone in her hip could be cancer. Dr. Rothacker diagnosed her with osteitis condensans ilei, a benign condition, recommended she take Advil and told her the condition would go away on its own.

Mrs. Keperling continued to experience pain and returned to Dr. Diehl in December of 1992 and January of 1993. Dr. Diehl sent her back to Dr. Rothacker as radiologists who had examined Mrs. Keperling's x-rays were again concerned that she may have cancer. Dr. Rothacker saw Mrs. Keperling in February of 1993. He did not believe it was cancer and did not perform a biopsy of the involved bone. Dr. Rothacker was unsure of what was causing the pain and changes visible in the bone and discussed Mrs. Keperling's case with his colleagues and solicited opinions from other doctors. Dr. Rothacker never saw Mrs. Keperling again, nor did he follow up on her case.

Mrs. Keperling was diagnosed with Hodgkin's Disease in February of 1998. She was treated aggressively with chemotherapy and a stem cell transplant. Unfortunately, the treatments were unsuccessful and she did not recover.

Presently before the court are plaintiffs' post-trial motions and defendants' cross-motion for post-trial relief. Plaintiff alleges that the court made four errors during the course of the trial. They complain that: (1) Dr. Creech testified beyond the fair scope of his pretrial expert reports; (2) Dr. Lackman testified beyond the fair scope of his expert reports; (3) Dr. Rothacker improperly testified about the basis for his opinions on the existence of cancer during his care; and (4) defense counsel improperly cross-examined plaintiff's expert, Dr.

Friedman regarding his testimony in other cases. Plaintiff asks for a new trial on causation only, or in the alternative, a new trial on all the issues. Defendant's cross-motion asks only that if a new trial is granted, it should be on all issues and not merely on causation.

In deciding whether to grant a new trial, the court must first determine if a factual, legal or discretionary mistake was made. *Harman ex rel. Harmen v. Borah,* 562 Pa. 455, 756 A.2d 1116, 1122 (2000). If a mistake was made, then the court must decide if the error was harmless. If it was not harmless, then a new trial is appropriate. *Id.* If the alleged mistake involves a discretionary act, then the trial court's ruling must be reviewed for an abuse of discretion. *Id.* at 1123. An abuse of discretion only exists where the court has rendered a judgment that is manifestly unreasonable, arbitrary or capricious, where the court failed to apply the law, or where the decision was motivated by partiality, prejudice, bias or ill will. *Id.*

Plaintiff first claims the trial court erred in permitting Dr. Creech, a defense expert witness, to testify beyond the fair scope of his report in violation of Pennsylvania Rule of Civil Procedure 4003.5(c). In Dr. Creech's initial report, he stated that it was "likely that Mrs. Keperling had a benign bony process from April 1991 until February 1998 and then developed an aggressive Hodgkin's Disease . . . ." During his testimony in court, however, Dr. Creech stated an affirmative opinion that Mrs. Keperling did not have Hodgkin's Disease in 1992 and 1993 and that the various radiological films taken during the course of Mrs. Keperling's treatment affirmed this opinion. Plaintiff claims that this change from "likely" to "certainly" is a clear change of opinions that they could not be expected to prepare for during trial and thus constituted unfair surprise.

The admission of expert testimony is at the sound discretion of the trial judge and is reviewed under an abuse of discretion standard. *Burton-Lister v. Siegel, Sivitz and Lebed Associates,* 798 A.2d 231, 240 (Pa. Super. 2002). Unfair surprise occurs when the discrepancy between pretrial disclosure and trial testimony is so great that the opposing party would be unable to mount a meaningful response. *Hickman v. Fruehauf Corp.,* 386 Pa. Super. 455, 459, 563 A.2d 155, 157 (1989). Such a discrepancy does not exist here. Dr. Creech's expert report, read as a whole, makes it very clear that he did not believe that Mrs. Keperling had cancer in 1992 and 1993. He uses the expressions "most unusual" and "exceedingly unusual" to describe the possibility that Mrs. Keperling had cancer much prior to her diagnosis in 1998. While he never states with absolute certainty that Mrs. Keperling did not have cancer in 1992 and 1993, given his use of the aforementioned language and the statement that it was "likely that Mrs. Keperling had a benign bony process," I cannot find that plaintiff was unfairly surprised by trial testimony that was more definite. Additionally, plaintiff was aware of the existence of all the radiological studies. Defense counsel did not suddenly produce them during trial. There was no change in Dr. Creech's opinion, merely a strengthening of the original opinion. The trial court did not abuse its discretion in permitting Dr. Creech to testify with certainty that Mrs. Keperling did not have cancer in 1992 and 1993.

Plaintiff further argues that this case is analogous to *Walsh v. Kubiak,* 443 Pa. Super. 284, 661 A.2d 416 (1995). In that case, the defendant's expert report addressed only one theory of negligence which the plaintiff had advanced. Defense counsel, however, wished the expert to testify about two of the three theories of negli-

gence asserted by the plaintiff, negligent performance of surgery, negligence in deciding to perform surgery and a lack of informed consent. The trial court precluded testimony as to the two theories not addressed in the expert report, negligence in deciding to perform surgery and informed consent. On appeal, the Superior Court affirmed the trial court stating that the expert report was not sufficient to put plaintiff on notice that the expert would be testifying to anything other than the performance of the surgery. A mere conclusory statement that "there is no indication of negligence" is not sufficient to allow the plaintiff to prepare a response. *Id.* at 293, 661 A.2d at 421.

The instant case is not the same. Dr. Creech's report did not ignore an aspect of the plaintiff's case as the *Walsh* expert did. Defense counsel did not then try to have him fill in the gap from the stand. Dr. Creech was always consistent in that he did not believe that Mrs. Keperling had cancer, he merely became more certain after reviewing additional evidence.

Plaintiff makes a similar argument regarding Dr. Lackman, another of Dr. Rothacker's expert witnesses. Dr. Lackman testified at trial that Mrs. Keperling did not have Hodgkin's Disease in 1992 and 1993. His initial report did not contain this explicit opinion. By supplemental report issued a month before trial, however, he did affirmatively state that Mrs. Keperling did not have cancer in 1992 and 1993. Plaintiff argues that this supplemental report contains only that conclusory statement without any explanation or reasoning as to the basis of his opinion. In order to comply with Pa.R.C.P. 4003.5, the grounds for an expert's opinion must also be disclosed. Bare conclusion is not sufficient to allow opposing counsel to prepare an adequate defense.

Dr. Lackman's first expert report, however, provides ample reasoning and support for the affirmative opinion ultimately expressed in the supplemental report. He states that there was no histologic confirmation of cancer, that Mrs. Keperling's pain went away for a long period of time and in the supplemental report, cites the radiological studies as one reason for his opinion. The two reports read together gave plaintiff ample notice of Dr. Lackman's opinions and their factual underpinnings. Plaintiff had sufficient notice to respond to Dr. Lackman's testimony.

Plaintiff next contends that the trial court committed error by permitting Dr. Rothacker to express an opinion during trial testimony that Mrs. Keperling did not have Hodgkin's Disease. He explained that he based this opinion upon a review of her subsequent medical records and radiological studies, not just on his own treatment of her. Plaintiff avers that allowing Dr. Rothacker to testify about the subsequent medical records was an error because during his deposition testimony, his opinion was based solely on his own treatment. The review of subsequent records was also not disclosed in later interrogatories. Plaintiff claims that Dr. Rothacker should have provided the additional factual basis for his opinions prior to trial.

Plaintiff called defendant Rothacker as on cross-examination in its case in chief. Dr. Rothacker then expressed the opinion that Mrs. Keperling did not have Hodgkin's Disease in 1992 and 1993. He did not believe she had cancer when he treated her and that belief never changed. The subsequent treatment records and radiological studies simply bolstered that opinion. Dr. Rothacker's opinion that Mrs. Keperling did not have cancer during his treatment of her could not have been a

surprise. The fact that at trial he had more reasons for that belief was not prejudicial.

Finally, plaintiff alleges that defense counsel was improperly permitted to cross-examine one of plaintiff's experts regarding other testimony he had given in unrelated cases. Plaintiff claims that the defense examination painted Dr. Friedman as a "hired gun" who would support anyone who could pay his fee. In support, plaintiff discusses *Mohn v. Hahnemann Medical College and Hospital*, 357 Pa. Super. 173, 515 A.2d 920 (1986). In *Mohn*, plaintiff's counsel asked the defendant's expert witness about his billing system and then added up all the fees generated by the doctor's medical-legal practice and announced totals going back five years to the jury. *Id.* at 178, 515 A.2d at 923. These figures also included bills for the treatment of patients and consultations at the request of other physicians, so long as the bill was paid by a law firm or other agency. *Id.* The Superior Court held that the trial court had abused its discretion in allowing this line of questioning and remanded the case for a new trial. *Id.* at 181-82, 515 A.2d at 925. Plaintiff argues that this case stands for the proposition that questions regarding the remuneration of expert witnesses must be restricted to fees paid for the instant case and any relationship with the counsel who solicited the expert. Plaintiff states that allowing defense counsel to ask about medical examinations done in areas other than medical negligence was prejudicial error that requires a new trial.

The questions asked by defense counsel here, however, were not nearly so invasive and broad as the questions asked in *Mohn*. There, the expert witness' entire billing system was deconstructed for the jury and the amounts discussed did not only include medical-legal work. Here, defense counsel asked about the relative

amounts of time Dr. Friedman spent treating patients versus evaluating medical-legal matters. No amounts of fees were discussed, merely percentages of income. The type of egregious questioning that occurred in *Mohn* was not permitted.

Plaintiff seems to be asking that this court draw a bright line and subdivide an expert's medical-legal work into categories such as medical negligence and workers' compensation claims. I do not believe such a line is appropriate or workable. A doctor's medical-legal work may overlap categories or cross over from his regular patient load. It would be necessary to establish the appropriate individual category on a case by case basis, potentially an arduous task. Experts would have to keep enormously detailed records, explaining when a patient crossed from one category to another and how the expert was compensated.

The trial court did not err in allowing the testimony of Drs. Creech, Lackman and Rothacker regarding Mrs. Keperling's Hodgkin's Disease, nor was the cross-examination of Dr. Friedman improper. As such, plaintiff's post-trial motion for a new trial will be denied. Defendants' cross-motion for post-trial relief will be denied as moot since no new trial will be granted.

Accordingly, I enter the following:

### ORDER

And now, April 10, 2003, upon consideration of plaintiff's post-trial motions and defendants' cross-motion for post-trial relief, the briefs of the parties and oral argument held on March 11, 2003, it is hereby ordered and decreed that the plaintiff's motions are denied and defendants' cross-motion is moot.